No. 2235.

JOHN MELLINGER AND WIFE v. MAYOR AND ALDERMEN OF THE CITY OF HOUSTON.

1. LIMITATION—MUNICIPAL CORPORATIONS.—The general statutes of limitation do not exempt municipal corporations from their operation, and the courts have no power to do so upon the mere ground of expediency and to avoid a seeming hardship.

2. CASES CITED AND REVIEWED.—Galveston v. Menard, 23 Texas, 408; Houston & Texas Central Railway Company v. Travis County, 4 Texas Law Review, 22; City of Wheeling v. Campbell, 12 West Virginia, 44; Evans v. Erie County, 66 Pennsylvania State, 222; School Directors v. Georges, 50 Missouri, 194, cited, and City of Jefferson v. Whipple, 71 Missouri, 521, reviewed.

3. TAXATION—PURCHASER—STATUTES CONSTRUED.—In construing the sixteenth section of the act of July 4, 1879 (General Laws, special session, 1879, page 15), which denies to any tax payer the right to plead in any court, or in any manner to rely upon any statute of limitation by way of defense against the payment of any taxes due from him or her, either to the State or to any county, city or town; *held*,

(1) One who purchases property encumbered with a lien for unpaid taxes must be deemed as to such taxes a delinquent tax payer, and can not avail himself of a defense which his vendor could not plead had he continued to be the owner.

(2) The statute contains nothing to indicate the legislative intent to give it a retroactive effect, and is operative only against those delinquent tax payers in whose favor limitation had not run before its passage.

(3) Rights based on contract are as fully protected by section 16, article 1, of the Constitution of Texas, as they are by section 10, article 1, of

the Constitution of the United States. Under the former, no citizen's rights of any character can be affected by a retroactive law. The latter, it has been held, does not prohibit the passage of a retroactive law, even though such a law may divest antecedent vested rights of property, unless such rights be founded on contract.

(4) That clause of the State Constitution which provides that no retroactive law shall be made, was intended to impose a broader restriction on legislative power than could exist in its absence. It protects the citizen in every legal right existing before the enactment of any law designed to retroact and deprive him of it; and this whether the right be strictly speaking a right to property or not.

(5) A right in a legal sense exists when in consequence of given facts the law declares that one person is entitled to enforce against another a claim, or to resist the enforcement of a claim urged by another.

(6) When by virtue of law a defendant may plead and show an existing state of facts which would defeat the plaintiff's right to recover, then a protecting right against the plaintiff's demand exists; such a right is fixed and vested, and in view of the constitutional provision against retroactive law, can not be divested by legislation. The same constitutional provision protects a plaintiff in the enforcement of every right, recognized and fixed by law, against retroactive legislation.

(7) Prior to the act of July 4, 1879 (General Laws, special session 1879, page 15), limitation would run against the right of a municipal government to enforce the collection of taxes, and if the bar was complete in favor of the delinquent tax payer before the adoption of that act, the right to rely on limitation as a defense was an existing right, which could not be defeated by any retroactive force of that act.

APPEAL from Harris. Tried below before the Hon. James Masterson.

*E. P. Turner*, for plaintiff in error: On his proposition that the plea of the statute of limitations was a good plea, if sustained by evidence, in bar of the recovery of taxes by the city of Houston, cited Dillon on Municipal Corporations, 810, section 815 (n); Wait's Actions and Defenses, volume 7, pages 234, et seq., and cases cited; City of Burlington v. Burlington & Missouri Railroad, 41 Iowa, 134; County of St. Charles v. Powell, 22 Missouri, 525; City of Wheeling v. Campbell, 12 West Virginia, 36; School Directors v. Georges, 50 Missouri, 194; Cincinnati v. First Presbyterian Church, 8 Ohio, 298; City of Cincinnati v. Evans, 5 Ohio State, 594; Jones v. Borden, 5 Texas, 410; Wood v. Waelder, 42 Texas, 396.

*S. Taliaferro*, for defendant in error: On the proposition that the statute of limitations can not be invoked to prevent the

recovery of taxes due the city of Houston, he cited Constitution of Texas, section 55, article 3; Id., section 15, article 8; sections 1 and 16, chapter 17, acts 1879, extra session Legislature; Appendix Revised Statutes, pages 36, 37, 39.

On his proposition that one who purchases and enters into the possession of land on which taxes are due, takes the land subject to the tax lien and becomes personally liable for the payment of the tax. He must look to his vendor for reimbursement after payment of the tax, he cited Henry v. Horstick, 9 Watts, 412; Smeich v. York County, 68 Pennsylvania State, 439; County Commissioners v. Clogett, 31 Maryland, 210; Oldham v. Jones, 5 B. Monroe, 458-465; Covington v. Boyle, 6 Bush, 204; Rundell v. Lakey, 40 New York, 513.

*C. Anson Jones,* also for defendant in error:  On his proposition that in all cases where liability is created by the positive requisitions of a statute, and not by the act of the parties themselves, the liability is treated as being in the nature of a specialty, and is not within the statute of 21 James, nor within the statutes adopted in the several States, applicable to simple contracts, unless expressly made so by the statute itself, and that it had accordingly been long established that where the liability of the defendant is created, not merely by the act of the parties, but by the positive requisitions of a statute, the plaintiff is not barred, cited Angel & Ames on Limitations, section 80; see also Council v. Moyamensing, 2 Barr's Pennsylvania Reports, 224; Pease v. Howard, 14 Johns's New York Reports, 479; Hannum v. West Chester, 63 Pennsylvania State, 475; Delaware, Lackawanna & Western Railroad v. Burson, 61 Id., 369; McClinton v. Pittsburg, etc., Railroad, 66 Id., 404; Magee v. Commonwealth, 46 Id., 358; DeHaven v. Bartholomew, 57 Pennsylvania State, 126; Coply v. Dormique, 2 Lee, 166.

STAYTON, ASSOCIATE JUSTICE.  This action was brought to recover taxes due to the city of Houston on lots owned by the plaintiffs in error.  The petition was filed on October 20, 1884, and sought a recovery of taxes levied for the years 1875, 1876, 1877, 1878, 1879 and 1880.

The defendants purchased the property taxed in the year 1881. Under the charter of the city of Houston the recovery of taxes on real estate is authorized by suit, and the taxes constituted a lien on the property taxed.  In defense of the action the defend-

ants pleaded the statutes of limitation of two and four years. The cause was tried without a jury, and the court below held that limitation did not run against the city. An assignment of error questions the correctness of that ruling.

In Galveston v. Menard (23 Texas, 408), it was held that the statute of limitations would run against a municipal corporation, and that by adverse possession a claimant might acquire title to land which constitued part of a public street.

In Houston & Texas Central Railway Company v. Travis County (4 Texas Law Review, 22), it was held that limitation would run against a county.

The same ruling has been made in many cases in reference to rights and property held by municipal corporations for public use, or in trust for public purposes. (City of Wheeling v. Campbell, 12 West Virginia, 44; Evans v. Erie County, 66 Pennsylvania State, 228; School Directors v. Georges, 50 Missouri, 195; Lessee v. First Presbyterian Church, 8 Ohio, 310; The City of Cincinnati v. Evans, 5 Ohio State, 594; Knight v. Heaton, 22 Vermont, 482; Varick v. Corporation of New York, 4 Johns's Chancery, 54; Town of Litchfield v. Wilmot, 2 Root, 288; Armstrong v. Dalton, 4 Devereux, 570; Rowan's Executors v. Portland, 8 B. Monroe, 233; Dudley v. Trustees, 12 B. Monroe, 617; Clements v. Anderson, 46 Mississippi, 597; Peoria v. Johnston, 56 Illinois, 51; City of Pella v. Scholte, 24 Iowa, 293.)

In the case of City of Burlington v. Burlington & Missouri Railroad Company (41 Iowa, 140) it was held that statute of limitations would operate to bar a recovery of taxes levied by a municipal corporation. In disposing of the case, it was said: "The right of the city to maintain this action can only be supported on the ground that the taxes are debts—property held by it in its proprietary character." It appears in this action in that character, claiming to recover on the ground that the defendant is its debtor upon an obligation created by the assessment and levy of the taxes. In the debt thus created it has a right of property in its proprietary character.

In The City of St. Louis to use v. Newman (45 Missouri, 138), it was held that the city was the substantial plaintiff, and that an action to recover a special tax levied for street improvement was barred by the statute of limitations, there being in force in that State no statute exempting municipal corporations from the operation of such statutes.

In the case of The City of Jefferson v. Whipple (71 Missouri,

521), an action was brought by the city to recover taxes due, and to enforce a lien against the taxed property, and it was held that as to the city the action was barred by the statutes of limitation. It appears from the opinion in that case that the city had, under the statute, no lien for taxes, but that a lien for municipal taxes was given to the State, and that, under the terms of the statute, it might, by suit, enforce the lien. In an action by the State to enforce the lien, it was held that limitation would not run, but this difference between an action by the State and one by the municipality, to which the tax was due, was not based on the fact that in the action by the State a lien might be enforced, while this could not be done by the city, but was based on the fact that, as against a State, limitation does not run unless permitted by statute, while, as against a municipal corporation, it will run unless restrained by statute. This is evident from the opinion, which declares that "The statute can not be pleaded to an action brought by the State for taxes, whether State or county, or to enforce a lien for delinquent city taxes. In an ordinary suit between the city and the individual against whom the taxes are assessed, the plea of the statute is a good defense. This presents an anomaly. The statute can be pleaded against the city, while in an action by the State to enforce the lien for the same taxes, the statute is not a bar to the action. This seems to be the condition in which the Legislature has left the subject, and it is not the province of this court to bring order and harmony out of this confusion and discord."

We see no real ground of distinction on which the operation of the statutes of limitation may be denied when the collection of municipal taxes is sought, and still recognized in other cases in which the subject of litigation, held as a public trust or for public use, as directly and materially may affect the public welfare as does the collection of taxes.

The general statutes of limitation do not exempt municipal corporations from their operation, and the courts have no power to do so upon upon mere grounds of expediency, or to avoid a seeming hardship.

The only inquiry necessary is as to the effect to be given to the sixteenth section of the act of July 4, 1879, General Laws, special session, 1879, page 15. That section provides that "No delinquent tax payer shall have the right to plead in any court, or in any manner rely upon any statute of limitation by way of

defense against the payment of any taxes due from him or her, either to the State or any county, city or town."

The manifest purpose of this statute was to deny to every person the right to defeat the collection of taxes through a plea of the statutes of limitation, and it shows that such a statute was deemed necessary by the Legislature to withdraw this right from the person indebted for taxes even to the State. It would seem that one who has purchased property incumbered with a lien for taxes should be deemed, as to such taxes, a delinquent tax payer. Such a purchaser takes the property charged with the lien, and he can not interpose any defense which his vendor might not had he continued to be the owner.

It appears from the record that the taxes sued for were due at the end of the year for which they were levied; and the fourth subdivision of article 3203, Revised Statutes, is applicable to an action such as this, and fixes the period of limitation at two years. This article in its subdivisions contains but the substance of the former law. Under this the taxes due for the years 1875 and 1876 were barred at the time the act of July 4, 1879, was passed, but the other taxes claimed were not.

In the absence of constitutional restrictions upon the subject, it is almost universally accepted as a sound rule of construction that a statute shall have only a prospective operation, unless its terms show clearly a legislative intention that it shall have a retroactive effect.

There is nothing in the statute before us to evidence the intention of the Legislature to give to it a strictly retroactive effect, and it must be held to be a valid law, governing in all actions brought to recover taxes after its passage, against which some valid defense did not exist at the time it took effect.

It is true that the statute does not in terms restrict its operation to such actions as might be founded on causes of action not barred by laws in force at the time of its passage, and that its broad and general language might make it applicable to all actions thereafter brought, even upon causes of action then barred; but if the statute was in terms such as to require such a construction, we are of the opinion that the Constitution of this State forbids such legislation.

There has been much controversy as to whether a statute giving a remedy for a debt barred by the statutes of limitation was not in violation of that part of the fourteenth amendment to the Constitution of the United States which declares that no State

shall "deprive any person of life, liberty or property without due process of law," or in violation of equivalent constitutional provisions found in the Constitutions of most of the States of this Union. That question was considered by the Supreme Court of the United States in the recent case of Campbell v. Holt, which arose under the forty-third section of article 12 of the Constitution of this State, framed in 1869, which declared that the statute of limitation should be considered as suspended from the twenty-eighth of January, 1861, until the acceptance of that Constitution by the United States Congress. In that case it was "held that in an action to secure real or personal property, when the question is as to the removal of the bar of statute of limitations by a legislative act passed after the bar has become perfect, that such act deprives the party of his property without due process of law. The reason is that, by the law in existence before the repealing act, the property has become the defendant's. Both the legal title and the real ownership had become vested in him, and to give the act the effect of transferring this title to plaintiff would be to deprive him of his property without due process of law."

The court, however, declared "that to remove the bar which the statute of limitations enables a debtor to interpose to prevent the payment of his debt stands on a very different ground," and held that the constitutional provision then under consideration, in so far as it removed the bar of the statute as to matters of debt, was valid.

It may be conceded under that decision (and we do not wish to be understood as questioning its correctness) that the statute under consideration, if required to be construed as a retroactive law, would not violate the provision of the Constitution of this State which declares that "no citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by due course of the law of the land."

The people of this State have, however, provided in all the State Constitutions adopted by them that "no bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made;" (Constitution, article 1, section 16) thus giving protection to rights by prohibiting the enactment of retroactive laws, which the Constitution of the United States does not give in terms.

Rights based on contract are as fully protected by section 16,

article 1, of the Constitution of this State, as are they by section 10, article 1, of the Constitution of the United States. It has been consistently held that the section of the Constitution of the United States last referred to does not prohibit the passage of laws retroactive in their character, even though such law may divest antecedent vested rights of property, unless such rights be founded on contract. (Satterlee v. Matthewson, 2 Peters, 412; Watson v. Mercer, 8 Peters, 110.)

Such rights as are held to be protected by that part of the fourteenth amendment to the Constitution of the United States to which we have referred are as fully protected by the nineteenth section of article 1 of the Constitution of this State. In the construction of a Constitution, it is to be presumed that the language in which it is written was carefully selected and made to express the will of the people, and that in adopting it they intended to give effect to every one of its provisions; and it can not be presumed that separate and distinct provisions were intended to have the same and no other effect than one of them has, unless the language used, when considered in connection with the whole instrument, shows that this must have been the intention.

It can not be presumed that in adopting a Constitution which contained a declaration "that no retroactive law shall be made," that it was intended to protect thereby only such rights as were protected by other declarations of the Constitution which forbade the making of ex post facto laws, laws impairing the obligation of contracts, or laws which would deprive a citizen of life, liberty, property, privileges or immunities, otherwise than by due course of the law of the land.

The character of laws which, within the meaning of the Constitution, would operate as ex post facto laws, and laws impairing the obligations of contracts, were well understood, not only from the language descriptive of them used in the Constitution, but from adjudications made by the highest courts in the land, prior to the time the Constitution was adopted; and there can be no doubt that by the clause in the Constitution which forbids the making of retroactive laws it was intended to give protection to every citizen against the arbitrary exercise of some power not forbidden by the other clauses of the Constitution referred to, which might be lawfully exercised but for this prohibition.

The section of the Constitution which declares that "no citizen of this State shall be deprived of life, liberty, property,

privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land," is written in plain language, but had not been so fully construed, as to its operation on laws retroactive in character, when the Constitution was adopted, as has it since been by the decision of the Supreme Court of the United States, to which we have referred; but it must be held that the people intended, by that clause of the Constitution, in so far as it is identical with the fourteenth amendment, to place thereby just such restrictions on the powers of the Legislature as the highest court in the nation has declared is the true construction of like language made a part of the Constitution of the United States for the purpose of placing a limitation on the power of the Legislatures of the several States.

As construed, that section of the Constitution only forbids the making of laws retroactive in effect whereby title to property which had vested under former laws would be divested.   To give this protection against arbitrary legislation there was no necessity for the broader declaration "that no retroactive law shall be made."

The making of it evidences an intention to place a further restriction on the power of the Legislature, and it must be held to protect every right, even though not strictly a right to property, which may accrue under existing laws prior to the passage of any act which, if permitted a retroactive effect, would take away the right.   A right has been well defined to be a well founded claim, and a well founded claim means nothing more nor less than a claim recognized or secured by law.

Rights which pertain to persons, other than such as are termed natural rights, are essentially the creatures of municipal law, written or unwritten, and it must necessarily be held that a right, in a legal sense, exists, when in consequence of given facts the law declares that one person is entitled to enforce against another a claim, or to resist the enforcement of a claim urged by another.

Facts may exist out of which, in the conrse of time or under given circumstances, a right would become fixed or vested by operation of existing law, but until the state of facts which the law declares shall give a right comes into existence, there can not be in law a right, and for this reason it has been constantly held that until the right becomes fixed or vested it is lawful for the law making power to declare that the given state of facts

shall not fix it, and such laws have been constantly held not to be retroactive in the sense in which that term is used. This has been illustrated by so many decisions, made upon so great a variety of facts, that it has become the settled law of the land. When, however, such a state of facts exists as the law declares shall entitle a plaintiff to relief in a court of justice on a claim which he makes against another, or as it declares shall operate in favor of a defendant as a defense against a claim made against him, then it must be said that a right exists, has become fixed or vested, and is beyond the reach of retroactive legislation, if there be a constitutional prohibition of such laws. This, so far as we have been able to ascertain, has been the ruling in every State in this Union which has a constitutional provision in terms forbiding retroactive laws in which any ruling upon the question has been made.

As early as the year A. D. 1784 the people of the State of New Hampshire placed in the Constitution of that State the declaration that "retroactive laws are highly injurious, oppressive and unjust. No such laws, therefore, should be made, either for the decision of civil causes or the punishment of offenses" (Constitution of New Hampshire, article 1, section 23), and the same provision was inserted in the Constitution adopted in 1792 in that State, where it still remains. The question now before us came before the Superior Court of Judicature of that State as early as the year 1826, in the case of Woart v. Winnick, and basing its decision on the section of the Constitution we have quoted, the court held that an action barred by the statute of limitations was forever barred, and that the right of the defendant to insist upon the bar of the statute could not be taken away by retroactive legislation. The principal involved in that decision has been asserted in many cases, arising on different facts, by the same court. (Dow v. Norris, 4 New Hampshire, 16; Clark v. Clark, 10 New Hampshire, 380; Willard v. Harvey, 24 New Hampshire, 351; Rich v. Flanders, 39 New Hampshire, 304; Rockport v. Walden, 54 New Hampshire, 167; Simpson v. Savings Bank, 56 New Hampshire, 470.)

The declaration "that no retroactive law   *   *   *   shall be made," was inserted in the Constitution of the State of Tennessee as early as the year 1796, and it has been inserted in the Constitution of that State subsequently adopted. We find no direct adjudication of the question before us by the Supreme Court of that State, but all the decisions found lead to the belief that the

same ruling would be made in that State which has been constantly made in the State of New Hampshire. (Fisher's Negroes v. Dabbs, 6 Yerger, 138; Officers v. Young, 5 Yerger, 320.)

In the case of Girduer v. Stephens (1 Heiskell, 280), it was held that the people of the State had no power, even by a provision placed in the Constitution of the State, to take away the defense of the statute of limitations when the facts which gave it had transpired before the adoption of the Constitution. The same ruling was made in Yancy v. Yancy (5 Heiskell, 353), and these decisions leave no doubt as to what the ruling would be in a case in which the constitutional provision forbidding retroactive laws to be made could be applied, though one of them is in conflict with the decision of the Supreme Court of the United States to which we have referred. As early as the year 1820 the people of Missouri incorporated into the Constitution of that State the declaration "that no * * * law * * * retroactive in its operation can be passed," (Constitution of Missouri, article 13, section 17) and this provision has been carried into all the Constitutions since adopted in that State. We have not access to all the reports of that State, and do not know what all the rulings made in the Supreme Court of that State upon the question before us have been, but we find it decided in the case of the State to use of Rosenblatt v. Heman (70 Missouri, 456), that an act of the Legislature of that State reviving a cause of action already barred would be unconstitutional.

In Hope Mutual Insurance Company v. Flynn (38 Missouri, 484), it is said that "a statute which takes away or impairs any vested right acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect to transactions already passed, is to be deemed retrospective or retroactive. * * * No new ground for the support of an existing action ought to be enacted by legislative enactment, nor any legal bar which goes to deprive a party of his defense." Barton County v. Walser, 47 Missouri, 200, is to the same effect.

The Constitution of Louisiana has a provision declaring that no law shall be passed divesting vested rights, unless for purposes of public utility, and for adequate compensation made. The State of Colorado, has declared in its Constitution no law retrospective in its operation shall be passed, but from the reports of these States to which we have access, we do not see that the question before us has been considered. The States to

which we have referred are the only ones which have constitutional provisions, in effect the same as exists in this State.

The section of the Constitution under consideration was considered in the case of DeCordova v. City of Galveston, 4 Texas, 480, and while the facts in that case did not call for the decision of the question before us, it did call for a determination of the character of laws which the Constitution forbids. It was said: "Laws are deemed retrospective and within constitutional prohibition which, by retrospective operation, destroy or impair vested rights, or rights to do certain actions or possess certain things, according to the law of the land (3 Dallam, 349); but laws which affect the remedy merely are not within the scope of the inhibition unless the remedy be taken away altogether, or incumbered with conditions that would render it useless or impracticable to pursue it. (Bronson v. Kinsie, 1 Howard, 315.) Or, if the provisions regulating the remedy be so unreasonable as to amount to a denial of right, as for instance, if a statute of limitations applied to existing causes barred all remedy, or did not afford a reasonable period for their prosecution; or if an attempt was made by law, either by implication or expressly, to raise causes of action already barred, such legislation would be retrospective within the intent of the prohibition; and would therefore be wholly inoperative." We have no doubt that the law is thus correctly stated. Such has been the holding in many of the States in which there was no express constitutional prohibition of retroactive legislation. The cases bearing upon this question are collected in Notes to Cooley's Constitutional Limitations, 449, 455; Sedgwick on the Construction of Statutory and Constitutional Law, 160–173.

The entry of a formal judgment against the appellant was evidently an inadvertence.

For the errors noticed, the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*