CATHEY v. WEAVER et al. (No. 5571.)

(Court of Civil Appeals of Texas. Austin. June 6, 1916. On Motion for Rehearing, April 4, 1917.)

1. LIMITATION OF ACTIONS ⬤⟹4(2)—STATUTES —VALIDITY.

As limitation laws relate to remedies only, the Legislature may increase or diminish the period of limitation, provided such change is made before the right becomes barred under the pre-existing statute.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 11.]

2. CONSTITUTIONAL LAW ⬤⟹191—RETROSPECTIVE STATUTES—VALIDITY.

Where the full period of limitation has elapsed and a pre-existing right has become barred, the Legislature cannot revive it.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 534.]

3. LIMITATION OF ACTIONS ⬤⟹4(2)—STATUTES —VALIDITY.

Acts 33d Leg. c. 123 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5693–5695), amending Rev. St. 1911, arts. 5693–5695, and shortening the period of limitation from ten to four years, is valid in so far as it curtails the period of limitation and permits suits for obligations otherwise barred to be brought one year from the enactment of the statute.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 11.]

4. CONSTITUTIONAL LAW ⬤⟹191—RETROSPECTIVE STATUTES—VALIDITY.

Where plaintiff's claim was not barred under the statute of limitations prior to 1913, in which year Rev. St. 1911, arts. 5693–5695, were amended by shortening the period of limitation and allowing action to be brought within one year, plaintiff lost his claim by failure to sue in such time, although by subsequent act of 1913 (Acts 33d Leg. [1st Called Sess.] c. 27 [Vernon's Sayles' Ann. Civ. St. 1914, art. 5695]), such statutes were amended so as to allow four years in which to sue, such amendment being beyond the power of the Legislature as retroactive.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 534.]

5. STATUTES ⬤⟹143 — VALIDITY — LAWS IN PARI MATERIA.

Laws enacted at a special session of Legislature amending those enacted at the regular session are not to be considered as so material to the enactment at the regular session that such enactment would not have been made without the amendment, and therefore one may stand as valid while the other may be declared invalid.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 211.]

6. JUDGMENT ⬤⟹243—PARTIES.

Where one defendant in his cross-petition failed to bring in as a party an interested person whom plaintiff impleaded, such defendant could not have any relief against such party, the notice conveyed by plaintiff's petition being insufficient to apprise such person of defendant's claim against him.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 428.]

Appeal from District Court, Brown County; John W. Goodwin, Judge.

Action by F. B. Weaver against G. C. Cathey and others. Defendants other than

Cathey were defaulted. Judgment for plain-tiff, and Cathey appeals. Reformed and affirmed.

Shropshire & House, of Brady, for appellant. Wilkinson & McGaugh, of Brownwood, for appellees.

KEY, C. J. We copy from appellant's brief the following statement of the nature and result of this suit:

"In 1907, G. C. Cathey owned the land involved in this suit. He sold it to one E. E. McClain, and McClain executed a vendor's lien note on the land, payable to Cathey, October 1, 1907, bearing 8 per cent. interest from date and providing for 10 per cent. attorney's fees. This note is still unpaid and owned by Cathey. The land was afterwards bought by G. H. T. Dodson, who gave a deed of trust thereon to plaintiff F. B. Weaver to secure a note for the sum of $2,160.75, making Wm. Koonce trustee. This was done February 10, 1911. Dodson then sold the land to D. R. Bailey, who assumed the payment of the $2,160.75 note, payable to Weaver. This last note being unpaid, F. B. Weaver brought this suit against Dodson, Koonce, Bailey, and Cathey to foreclose on the land. In this suit Weaver first charged that the note given to Cathey, which was recited in the deed from Cathey to McClain, and in plaintiff's chain of title, was fictitious, fraudulent, and void, and prayed that the same be held for naught, and that the title be cleared, and that the lien given by Dodson and assumed by Bailey be foreclosed. All defendants except G. C. Cathey made default. Cathey answered, alleging that his note was genuine, and not fictitious or void; that it was due and unpaid; that he held the superior title to the land as well as the vendor's lien to secure the payment of his note; and that McClain was insolvent. He prayed that the court order his note first paid out of the proceeds of the land, and that his equities be fully protected by the decree of the court. In reply to this the plaintiff pleaded the statute of limitations against Cathey's claims. The lower court sustained the plaintiff's pleas of limitations against Cathey's said claims, and rendered judgment, foreclosing plaintiff's lien, and ordering the land sold and the proceeds of the sale applied as follows: First, to the payment of plaintiff; second, any balance to be paid to the defendant Bailey. The defendant Cathey excepted to this judgment, contending that, as the codefendants did not interpose the plea of limitations, any balance at least after paying plaintiff should be paid over to Cathey. Attorney for plaintiff contended and the lower court held that, as the codefendants had not been specially notified or cited to answer defendant Cathey's cross-action, judgment should go altogether against Cathey, and it was so ordered; hence this appeal.

"First. G. C. Cathey contends that the Legislature of 1913, when it curtailed and restricted his right of ejectment, and substituted in lieu thereof the right to foreclose his vendor's lien, which last right had been formerly barred, that it acted within its power, because it simply substituted one legal remedy for another.

"Second. That if the portions of said act of 1913 which undertook to substitute the right to foreclose the vendor's lien in lieu of the right of ejectment, which last right then subsisted in behalf of the vendor Cathey, be void, then the court should disregard the whole of the acts of 1913, relating to this subject, and protect Cathey's rights as the holder of the vendor's superior title, because it is apparent from the legislation referred to and the history thereof that the Legislature of 1913 would not have further curtailed this and other vendors' rights of ejectment who were then barred of their right to foreclose, without extending their rights to foreclose their liens.

"Third. That the lower court was wrong in ordering any excess, after satisfying the claim of plaintiff, to be paid over to codefendants instead of Cathey; because the citation served upon each codefendant notified him that the validity of Cathey's lien would be litigated; and that each codefendant was thereby put upon notice that Cathey was maintaining and would contend that his lien was valid, and as a natural sequel he would ask that his rights as vendor be protected."

## Opinion.

The main question in the case is presented under appellant's first assignment of error, and involves the contention that the court erred in holding that appellee Weaver's lien was superior to appellant's prior lien. This contention involves the validity of and construction to be placed upon certain legislation prescribing periods of limitation as against suits to enforce the rights of real estate mortgagees and the vendors of real estate secured by liens upon the property sold. In 1905 (Acts 29th Leg. c. 138) the Legislature passed a law declaring that:

"No power of sale conferred by deed of trust or mortgage on real estate executed after [July 14, 1905] shall be enforced after the expiration of ten years from the maturing of the indebtedness secured thereby. * * * When a vendor's lien is retained to secure the purchase money in any sale of real estate after [July 14, 1905], the right to recover such real estate by virtue of the superior title retained shall be barred after the expiration of ten years from the maturity of the debt; and if suit is not brought for recovery of such real estate within such term, the purchase money therefor shall be conclusively presumed to have been paid."

It was also provided in the same act that the parties might, in a certain manner, extend the time of payment, and that limitation would not begin to run until after the expiration of the time agreed upon. The provisions of that statute are incorporated in the Revised Statutes of 1911 in articles 5693, 5694, and 5695. At the regular session of the Thirty-Third Legislature (Acts 33d Leg. c. 123 [Vernon's Sayles' Ann. Civ. St. 1914, arts. 5693–5695]) those articles of the Revised Statutes were amended so as to read as follows:

"Art. 5693. No power of sale conferred by any deed of trust or any mortgage on real estate heretofore executed, or that may hereafter be executed, shall be enforced after the expiration of four years from the maturity of the indebtedness secured thereby, and any sale under such power after the expiration of such time shall be void, and such sale may be enjoined and the lien created in such mortgages or deeds of trust shall cease to exist four years after the maturity of the debt secured thereby. Provided, if several obligations are secured by said mortgage or deed of trust, the same may be enforced at any time prior to four years after the note or obligation last maturing has matured and may be enforced as to all notes or obligations not then barred by the four years statute of limitations.

"Art. 5694. The right to recover any real estate by virtue of a superior title retained in any deed of conveyance heretofore or hereafter executed, or in any vendor's lien note or notes heretofore or hereafter executed, given for the purchase money of such real estate, shall be

barred after the expiration of four years from the maturity of such indebtedness, and if suit is not brought for recovery of such real estate, or for the foreclosure of the lien to secure such note or notes within four years from the date of the maturity of such indebtedness, or if suit is not brought within such time for the recovery of the land by the original vendor, or his transferee, or for the foreclosure of the lien given to secure such notes, the purchase money therefor shall be conclusively presumed to have been paid in any suit to recover such land or to enforce a lien thereon, and the lien reserved in any such notes and deeds conveying the land shall cease to exist four years after the note or notes have matured, provided the lien reserved in such note or notes may be extended as provided in section 5695 of this chapter and provided, if several obligations are secured by said deed of conveyance, the same may be enforced at any time prior to four years after the note or obligation last maturing has matured and may be enforced as to all notes not then barred by the four years statute of limitations.

"Art. 5695. When the date of maturity of either debt referred to in either of the foregoing articles is extended, if the contract of extension is signed and acknowledged as provided for in the law relating to the execution of deeds of conveyance by the parties to the contract of extension, and filed for record in the county clerk's office in the county in which the land is situated, the lien shall continue and be in force until four years after maturity of the notes as provided in such extension the same as in the original contract, and the lien shall so continue for any succeeding or additional extensions so made and recorded. The date of maturity set forth in the deed of conveyance or deed of trust or mortgage, or the recorded renewal and extension of the same, shall be conclusive evidence of the date of maturity of the indebtedness therein mentioned. Provided that the owners of all notes secured by deeds of trust or other liens and the owners of all vendor's lien notes reserved in deeds of conveyance which were executed prior to July 14th, 1905, and which are more than four years past due at the time this act takes effect, as shown by the original mortgage, deed of trust or conveyance, shall have twelve months after this act takes effect within which they may bring suit to enforce the liens securing them, if same are valid obligations when this act takes effect, and if suit is not brought within such time the right to bring suit to enforce such liens shall be forever barred; and provided, that the owners of all notes secured by deeds of trust or other liens and the owners of all vendor lien notes reserved in deeds of conveyance, which were executed subsequent to July 14th, 1905, shall have four years after this act takes effect within which they may bring suit to enforce the liens securing them, if same are valid obligations and not already barred by the four years statute of limitations when this act takes effect, and if suit is not brought within such four years, or four years after they mature, they shall be forever barred from the right to bring suit to enforce the lien securing the same; and providing those owning the superior title to land retained in any deed of conveyance, or his transferee and those subsequently acquiring such superior title by transfer shall have twelve months after this act takes effect within which to bring suit for the land, if their claim to the land is not otherwise invalid, and unless such suit is brought within twelve months after this act takes effect, they shall be forever barred from bringing suit to recover the same."

"Sec. 4. The fact of the near approach of the end of this session, and the fact that there are a great many land titles in this state that are clouded by reason of vendor's lien and deed of trust appearing on the records apparently unpaid, creates an emergency and an imperative public necessity requiring the suspension of the constitutional rule requiring bills to be read on three several days in each house, and this act shall take effect and be in force from and after its passage."

That act was approved by the Governor on April 3, 1913, 2 days after the adjournment of that session of the Legislature, but it did not take effect until 90 days after adjournment. At the first called session of the Thirty-Third Legislature (Acts 33d Leg. [1st Called Sess.] c. 27 [Vernon's Sayles' Ann. Civ. St. 1914, art. 5695]) article 5695, as amended by the act heretofore referred to, was again amended so as to read as follows:

"Art. 5695. When the date of maturity of either debt referred to in either of the foregoing articles is extended, if the contract of extension is signed and acknowledged as provided for in the law relating to the execution of deeds of conveyance by the party or parties obligated to pay such indebtedness as extended and filed for record in the county clerk's office in the county in which the land is situated, the lien shall continue and be in force until four years after maturity of the notes as provided in such extension, the same as in the original contract and the lien shall so continue for any succeeding or additional extension so made and recorded. The date of maturity set forth in the deed of conveyance or deed of trust or mortgage or the recorded renewal and extension of the same shall be conclusive evidence of the date of maturity of the indebtedness therein mentioned. Provided that the owners of all notes secured by deeds of trust or other liens and the owners of all vendor's lien notes reserved in deeds of conveyance which were executed prior to July 14, 1905, and which are more than four years past due at the time this act takes effect as shown by the original mortgage, deed of trust or conveyance, or last record extension shall have twelve months after this act takes effect within which they may obtain such record extension as hereinbefore provided for, or bring suit to enforce the liens securing them if same are valid obligations when this act takes effect and if such debt is not so extended of record, or suit is not brought within such time, the right to extend such debt of record, or bring suit to enforce such liens shall be forever barred; and provided that the owners of all notes secured by deeds of trust or other liens and the owners of all vendor's lien notes reserved in deeds of conveyance which were executed subsequent to July 14, 1905, shall have four years after this act takes effect within which they may obtain such recorded extension as herein provided for, or bring suit to enforce the liens securing them if same are valid obligations and not already barred by the four years' statute of limitations when this act takes effect, and if such debt is not extended of record, or suit is not brought within such four years or four years after they mature, they shall be forever barred from the right to extend such debt of record, or bring suit to enforce the lien securing the same, and further provided if any such obligations executed subsequent to July 14, 1905, were barred by the four years statute of limitation on the 30th of June, 1913, the owners thereof shall have four years within which to bring suit to enforce the lien securing the same; and providing those owning the superior title to land retained in any deed of conveyance or his transferee and those subsequently acquiring such superior title by transfer, shall have twelve months after this act takes effect within which to bring suit for the land if their claim to the land is not otherwise invalid and unless such suit is brought within twelve months after this act takes ef-

fect, they shall be forever barred from bringing suit to recover the same."

That act was delivered to the Governor August 19, 1913, and took effect 90 days thereafter, that session of the Legislature having adjourned on that day.

[1-4] As limitation laws prescribing the time within which a particular right may be enforced relate to remedies only, it is well settled by the authorities that the Legislature has the power to increase or diminish the period of time necessary to constitute limitation, provided such change is made before the right has become barred under the pre-existing statute of limitation. And it is equally well settled in this state that where the full period of limitation has elapsed, and a pre-existing right has become barred, the Legislature has no power to revive such pre-existing right; and the application of these two rules are decisive of this case. Applying these rules to this case, we hold that the Legislature acted within the scope of its authority when it passed the act of April 3, 1913, which took effect in July following, in so far as that act curtailed the period of limitation as it formerly existed, but left to appellant Cathey an adequate remedy for the protection of his rights. At the time that law took effect his debt was barred by the four-year statute of limitation. However, that act left to him the right to bring suit for the land at any time within 12 months after it took effect. As before stated, the act took effect in July, 1913, but appellant Cathey instituted no suit to recover the land, or for the protection of his rights, until he filed his answer in this case on December 14, 1914; and for this reason we feel compelled to hold that both his right to enforce his lien and to recover the land were barred by limitation and not enforceable, unless he is protected by the subsequent act of August, 1913. It cannot be denied that the latter act has undertaken to protect such claims as are asserted by appellant, because it is therein provided that if obligations executed subsequent to July 14, 1905, were barred by the four-year statute of limitation on the 30th of June, 1913, the owners thereof shall have four years within which to bring suit to enforce their lien; and those owning the superior title to land retained in any deed of conveyance should have 12 months after the act takes effect within which to bring suit for the land.

Counsel for appellee contend, and the court below seems to have sustained the contention, that, inasmuch as appellant's rights to enforce his lien or recover the land had become barred before that act was passed, the provisions thereof just referred to, are unconstitutional and void. Counsel for appellant challenge the correctness of that holding, but we feel compelled to overrule their contention, and to approve the ruling referred to. As before stated, the weight of authority, as well as reason, support the doctrine that when a right which would constitute a cause of action has ceased to exist, though such result may have been brought about by operation of a statute of limitation, the Legislature has no power to vitalize and revive such pre-existing right. In this state such statutory enactments violate that provision of our state Constitution which prohibits the enactment of retroactive laws. Taylor v. Duncan, Dallam, Dig. 514; Mellinger v. City of Houston, 68 Tex. 37, 3 S. W. 249; Nat. Bank v. Nat. Bank, 85 Tex. 560, 22 S. W. 579. The Mellinger Case is directly in point, and it was there held that a statute similar to the one under consideration, denying the right to plead limitation after the claim had become barred under an existing statute of limitation, was in contravention of that section of our Constitution which prohibits retroactive laws. After discussing certain provisions of the federal Constitution, and referring to the construction placed thereon by the federal Supreme Court, our Supreme Court, in construing that section of the Constitution which prohibits the enactment of retroactive laws, said:

"The making of it evidences an intention to place a further restriction on the power of the Legislature, and it must be held to protect every right, even though not strictly a right to property, which may accrue under existing laws prior to the passage of any act which, if permitted a retroactive effect, would take away the right. A right has been well defined to be a well-founded claim, and a well-founded claim means nothing more nor less than a claim recognized or secured by law. Rights which pertain to persons, other than such as are termed 'natural rights,' are essentially the creatures of municipal law, written or unwritten, and it must necessarily be held that a right, in a legal sense, exists, when in consequence of given facts the law declares that one person is entitled to enforce against another a claim or to resist the enforcement of a claim urged by another. Facts may exist out of which, in the course of time or under given circumstances, a right would become fixed or vested by operation of existing law, but until the state of facts which the law declares shall give a right shall come into existence, there cannot be in law a right, and for this reason it has been constantly held that until the right becomes fixed or vested it is lawful for the lawmaking power to declare that the given state of facts shall not fix it, and such laws have been constantly held not to be 'retroactive' in the sense in which that term is used. This has been illustrated by so many decisions, made upon so great a variety of facts, that it has become the settled law of the land. When, however, such a state of facts exists as the law declares shall entitle a plaintiff to relief in a court of justice on a claim which he makes against another, or as it declares shall operate in favor of a defendant as a defense against a claim made against him, then it must be said that a right exists, has become fixed or vested, and is beyond the reach of retroactive legislation, if there be a constitutional prohibition of such laws. This, so far as we have been able to ascertain, has been the ruling in every state in this Union which has a constitutional provision in terms forbidding retroactive laws in which any ruling upon the question has been made."

[5] Appellant's counsel make the contention that if the provision of the statute referred to under which they claim protection is unconstitutional, then both of the laws

enacted by the Thirty-Third Legislature should be declared void, in which event the parties would be remitted to the pre-existing laws, and appellant's claim of title to the land would not be barred. If the two acts referred to had been passed at the same time, or even at the same session, there might be force in the contention urged. But such is not the case; the act approved April 3, 1913, was passed at the regular session of the Legislature, which adjourned on April 1, 1913, while the other act was passed at the called session beginning July 21, 1913, at which time the former act had already gone into effect. This demonstrates the fact that the rule which requires laws enacted at the same session of the Legislature, and relating to the same subject-matter, to be considered as one act has no application. Under the rule referred to, if these two acts had been passed at the same session of the Legislature, there might be merit in the contention that if any material part of either act be held unconstitutional, both acts should be declared void. That rule is based upon the doctrine that the courts have no right to assume that when the Legislature has enacted a particular law, if certain material provisions thereof had been stricken out, it would have enacted the remainder. But that rule can have no application to the acts of the Legislature here involved, because the act which contains the unconstitutional provisions was enacted at a subsequent session, and after the former act, under which appellant's rights became barred, had gone into effect, which demonstrates to an absolute certainty that in enacting the first statute the Legislature could not have been influenced by a statute enacted at a subsequent session. It may indicate that after the former law was enacted the Legislature realized the fact that it had acted unwisely, and sought to avoid the effect thereof by incorporating in a subsequent law the unconstitutional provisions referred to. But it does not indicate that at the time the first law was passed it would not have been enacted had not the Legislature understood that the second law would be enacted at the same session.

[6] There is one other question of minor importance which is embraced in appellant's contention that the trial court committed error in awarding to appellee Bailey any balance of the proceeds of the sale of the land, after payment of appellee Weaver's debt, costs, etc. Appellant's contention is that, as Bailey filed no answer, and did not plead limitation as against appellant's claim, the judgment should have been in favor of appellant for any balance that might exist after satisfying Weaver's claim. If appellant had impleaded appellee Bailey, and asserted his right as against him to the surplus, and the latter had filed no answer, appellant would be in a much better position. However, he makes the contention that the petition of plaintiff Weaver which appellee Bailey was cited to answer disclosed the fact that appellant was asserting a prior lien upon the land, and that that constituted sufficient notice to Bailey that appellant would assert whatever rights he might have in that respect. We doubt the correctness of that contention, and are not willing to render judgment in favor of appellant as against appellee Bailey. However, we have concluded to affirm the judgment as between appellant and appellee Weaver; but to reform it so as to require the officer who sells the property under an order of sale to pay over to the clerk of the court below whatever surplus, if any, may remain after discharging the debt of the plaintiff Weaver and paying all costs, and to require the clerk of that court to hold such surplus for a period of 10 days in order to give appellant Cathey time within which to file a plea impleading appellee Bailey, and asserting appellant's right to such fund; and if such pleading is filed within such time, then the clerk is ordered to hold such fund until the court of which he is clerk has disposed of appellant's claim asserted against Bailey, and directed the clerk as to which party to pay the same. But if such pleading be not filed within 10 days, then the clerk is ordered to pay such fund to appellee Bailey. The costs of this appeal are taxed against appellant and the sureties on his appeal bond.

Reformed and affirmed.

## On Motion for Rehearing.

This motion has been given careful consideration, but our conclusion is that this court has properly disposed of the case, and that the motion should be overruled.

We concede the fact, as stated in the motion, and also stated in our former opinion, that at the time the Legislature passed the act of August, 1913, by which it attempted to restore to appellant, and all others similarly situated, the right to maintain an action in court which had already been barred by the statute of limitations, appellant possessed another remedy, and could have maintained a suit for the recovery of the land, unless in answer to such suit an offer had been made to pay the debt. But we do not concede that because of the existence of such other remedy the Legislature had the power to revive and restore an additional remedy which had been barred by limitation.

We fail to see the force of the argument, which concedes that if at the time referred to appellant had possessed no other remedy, then the Legislature would have had no power to restore to him a right which had become barred by limitation, but insists that the Legislature had such power, because at the time referred to appellant had another and different remedy which had not become barred. By what rule of logic or reason it

can be maintained that the Legislature may exercise a power which is prohibited by the Constitution, merely because the party in whose behalf it is exercised has another remedy, is more than we are able to understand.

The cases cited by counsel for appellant are not analogous, and do not sustain appellant's contention. The reference to Cyc. contains one sentence which seems broad enough to support the contention urged. The entire section reads as follows:

"Upon the question as to how far vested rights may be gained in the running of the statute for the time requisite to bar actions, and whether a bar thus once gained may be subsequently affected by the repeal of the statute or a renewal of time for bringing the action once barred, the authorities are in conflict. The weight of authority in the several states, it is believed, supports the view that the bar gained by the running of the statute is a vested right which cannot subsequently be taken away by the Legislature either by creating a new right, repealing the former statute, or withdrawing a specified past period from its operation. There are, however, contrary authorities in several jurisdictions, and the rule that the bar to a claim for debt cannot be a vested right is established in the United States Supreme Court by a series of decisions. These authorities would usually distinguish cases where the bar gained is merely against the remedy of the creditors, as in case of a debt from cases where the bar has vested an absolute title to real or personal property. There can be no right gained in the running of the statute till the prescribed period of limitations is completed, or according to some authorities till not only the remedy is barred, but the limitation has entirely extinguished the former right and vested a title. *But where only one particular form of remedy is barred, while other equivalent forms remain, there can be no objection to a removal of a bar on the first.* A distinction is sometimes attempted as to whether a statute as it originally stood conferred a right not existing at common law or limited one which did so exist before, the doctrine being that in the latter case a bar already complete under the statute may be removed by later act." 8 Cyc. pp. 922, 923.

The sentence italicized is that relied on by counsel for appellant. But one case is cited by the author in support of that text, which is Power v. Telford, 60 Miss. 195. We have examined that case, and find that the Supreme Court of Mississippi held that while a party in possession of property could acquire a vested right in it by flow of time, he could never acquire a vested right in or against any particular remedy, and that, such being the case, it was competent for the Legislature to give to the owner of the property additional remedies, or to restore to him an old one which had been lost by a lapse of time.

If that court was correct in holding that there could be no vested right in or against a particular remedy, then it correctly reached the conclusion that the Legislature had the power to restore a remedy which was barred by limitation, even if the Constitution of that state is similar to ours, which is not made to appear by the report of the case. But, as shown by our former opinion, the

doctrine in this state as announced by our Supreme Court is just the reverse of that announced by the Supreme Court of Mississippi, and is to the effect that a party may acquire a vested right to plead a statute of limitation, and that after the lapse of the time necessary to perfect such a right the Legislature is prohibited by our Constitution from passing any law that would impair that right. According to Cyc. the weight of authority supports that view, although there are decisions in other jurisdictions, including the Supreme Court of the United States, which announce a contrary view.

Our conclusion is that the motion for rehearing should be overruled; and it is so ordered.

Motion overruled.