## JOHNSON v. STEELE.

### No. 4731.

Court of Civil Appeals of Texas. Texarkana.
Sept. 13, 1935.

Rehearing Denied Sept. 26, 1935.

Long & Wortham and Hutchison & Fisher, all of Paris, for appellant.

Moore & Moore, of Paris, for appellee.

JOHNSON, Chief Justice.

This suit was filed November 22, 1933, by appellant as receiver of property of the heirs and legatees of the estate of J. K. Bywaters, deceased, against appellee, administrator of the estate of E. R. (Edgar) Hunter, deceased, to recover $19,261.30 alleged to be the total of principal, interest, and attorney's fees remaining due upon a certain vendor's lien note for $33,390, and to foreclose the vendor's lien on six tracts of land described, of which the note represented the purchase money. The note is alleged to have been executed and delivered by E. R. Hunter on January 17, 1919, payable to Walter Bywaters and Graves Shull as attorneys in fact for the heirs and legatees of J. K. Bywaters, deceased, and due on or before September 1, 1922. Claim for which indebtedness had been duly presented to and rejected by defendant, administrator of the estate of E. R. Hunter, deceased. The petition prayed that the judgment establishing the debt and foreclosing the vendor's lien be certified to the probate court for observance. There are other facts alleged in plaintiff's original and supplemental petitions which we will later set out.

In so far as is necessary to state the answer of the defendant, his special exceptions Nos. 2 and 3 are as follows:

"2. The defendant specially excepts to said petition because it appears on its face that the note and debt, which constitute the cause of action declared on in plaintiff's petition, if any the plaintiff ever had, is barred by the four years statute of limitation, and that the vendor's lien, as declared on in plaintiff's said petition, shows on the

face of said petition that such lien is barred and extinguished by the four years statute of limitation; and of this exception the defendant prays judgment of the court.

"3. The defendant further specially excepts to the plaintiff's said petition for the reason that it shows on its face that the vendor's lien note, or the purchase money note, for the land, as the same is set out and described in plaintiff's petition, became due more than four years prior to the death of E. R. Hunter, the maker of said note, and that consequently no cause of action is by said petition shown to exist against this defendant, as administrator of the estate of said E. R. Hunter, now deceased, in that by law it is conclusively presumed that said note was paid after four years from the date of the maturity of said note, and said petition on its face shows that four years from the time of the maturity of said note had expired long prior to the death of said E. R. Hunter; and of this exception defendant prays judgment of the court."

As facts by reason of which it is contended that the statutes of four years' limitation, and conclusive presumption of payment, did not operate against the note, plaintiff alleges:

"That prior to January 17, 1919, the parties to the aforesaid suit and other heirs of J. K. Bywaters, deceased, and legatees under his will, executed and delivered a power of attorney to Walter Bywaters, E. R. Hunter and Graves Shull, whereby said attorneys in fact were authorized among other things to convey property belonging to the maker of said instrument, and in case one of said attorneys in fact desired to purchase any of said property, the other two attorneys in fact were authorized to execute proper deed and conveyance. That on January 17, 1919, Walter Bywaters and Graves Shull as attorneys in fact executed and delivered a deed to E. R. Hunter, the other attorney in fact, conveying certain property belonging to the makers of said power of attorney, situated in Lamar County, Texas," * * * being the six tracts of land described in plaintiff's petition. * * * "That said note was given in payment for the above described property, and the vendor's lien was expressly retained in said note and deed as security for said indebtedness. * * * That the following stipulation signed by Edgar (E. R.) Hunter appears on the back of said note:

"It is agreed between the maker and the payees of this note, that the same is to be paid out of the interest of the maker in the collections to the credit of the J. K. Bywaters Estate, and I, the maker hereof, do hereby authorize the said Walter Bywaters and Graves Shull, as attorneys in fact, to apply my interest in the collections to the credit of said estate to the payment of this note.

"(Signed)   Edgar Hunter."

"Plaintiff further alleges that payments were made on said note and credited on the back thereof as follows:

| | | |
|---|---|---|
| 4–2–19, | By cash | $ 8,828.02 |
| 11–12–19, | By cash | 10,000.00 |
| 4–6–1922, | By cash | 5,000.00 |
| 1–11–23, | By cash | 5,000.00 |

"Plaintiff further alleges that Walter Bywaters, one of said attorneys in fact died on or about 23rd day of December, 1919, and that by common consent of all the parties at interest, all of the property belonging to the estate of J. K. Bywaters, deceased, including the note in controversy, was held, controlled and managed by E. R. Hunter up to the time of his death, which occurred on the 27th day of July, 1932. That as such trustee or attorney in fact, said E. R. Hunter retained sole custody and control of the aforesaid note up to the time of his death, and that after said Hunter's death, said note was found among other papers belonging to said J. K. Bywaters heirs and legatees which were in Hunter's custody and under his control at the time of his death. Plaintiff further alleges that all the revenues arising from the properties belonging to said Bywaters heirs and legatees were received and handled by decedent, E. R. Hunter, especially after the death of Walter Bywaters; that defendant's decedent (E. R. Hunter) participated in his mother's interest in such revenues, she having been one of such heirs and legatees, and that he directed and participated in the placing of the credits on said note in pursuance of the aforesaid stipulation on the back thereof."

In his supplemental petition plaintiff further sets out the facts by which he seeks to suspend the operation of the statute of limitation against the note, as follows:

"And for further and special replication, plaintiff alleges that the power of attorney alleged in his original petition was executed by Mrs. Ollie Hunter, mother of E. R. Hunter, deceased, Mrs. Phoebe High and Mrs. Mattie Martin, his aunts and other heirs of J. K. Bywaters, deceased, who were the cousins of said E. R. Hunter,

* * * Guy Morgan, Claud Morgan, R. S. Bywaters, P. A. Bywaters, K. H. Bywaters, Mrs. Myrtle Watson and Mrs. Bernie Bludworth; that Walter Bywaters, one of the attorneys in fact, was a brother of one of their heirs of J. K. Bywaters, deceased, and an uncle of E. R. Hunter. That by reason of said relationship the makers of said instrument had and reposed trust and confidence in said E. R. Hunter, and conferred upon him together with the other two attorneys in fact full power in the management, control and handling of the estate and properties placed in their hands by reason of said instrument. That while E. R. Hunter was not one of the heirs of J. K. Bywaters, deceased, his mother, Mrs. Ollie Hunter, gave him an interest in her part of the revenues accruing to said J. K. Bywaters estate, and that said E. R. Hunter thereby had an interest in the property and revenues committed to his care, custody and management by the term of said power of attorney.

"That by the terms of said power of attorney, the attorneys in fact were granted power to sell and convey at their discretion any and all of the real estate and personal property belonging to said J. K. Bywaters, deceased, except certain lands inherited by said J. K. Bywaters from his brother, Ban A. Bywaters, deceased. Said attorneys in fact were authorized by said instrument to sell land for cash or part cash and part credit and take vendor's lien notes for deferred payments to them as such attorneys in fact. Said attorneys in fact were expressly authorized to sign receipts and releases necessary and proper in carrying out any of the powers conferred; to collect all rents, interest, revenues and royalties arising from the property belonging to said J. K. Bywaters estate, and from time to time make distribution to the makers of said instrument according to their respective interests in such proceeds and to furnish the makers with statements of all such transactions; said power of attorney conferred upon the attorneys in fact, including E. R. Hunter, deceased, full power and authority to do and perform all and every act whatsoever requisite and necessary to be done in and about the powers therein delegated, as fully as they themselves might or could do personally.

"Plaintiff further alleges that after the execution and delivery of said power of attorney said Walter Bywaters, E. R. Hunter and Graves Shull accepted the trust, took into their possession and custody all of the property of said estate consisting of real estate, personal property, money and choses in action, and immediately entered upon the discharge of their duties and powers as such trustees in fact, and continued to manage and control such property and collect and receive rents and revenues arising therefrom up to the time of the death of Walter Bywaters, as alleged in plaintiff's original petition. That at the time of the death of Walter Bywaters the note in controversy was in the possession and custody of said attorneys in fact, and that two payments had been made thereon and credited on the back thereof, such payments having been made out of the interest of E. R. Hunter, deceased, in revenues accruing to said estate, received and handled by said attorneys in fact. That after the death of Walter Bywaters, E. R. Hunter, deceased, and Graves Shull, who also had an interest in said estate, with the knowledge, acquiescence and consent of the makers of said power of attorney, continued to act as attorneys in fact and trustees under the terms and provisions of said instrument. That Graves Shull, who is a party to this suit and has an interest in the estate of J. K. Bywaters, deceased, was at the time a resident of the State of Oklahoma, such residence having been continued up to this time; that E. R. Hunter, deceased, resided in the City of Paris, Lamar County, Texas, and with the approval of his co-trustee, Shull, retained the note in controversy and thereafter certain other payments were made and credited thereon, such payments having been made by E. R. Hunter, deceased, out of his interest in the revenues of said estate.

"Plaintiff further alleges that while the note in controversy on its face is made payable on or before September 1, 1922, by reason of the stipulation on the back thereof providing for payment out of the interest of E. R. Hunter, deceased, in the revenues and collections to accrue to the J. K. Bywaters estate, the date of maturity was thereby rendered uncertain, and since E. R. Hunter, deceased, had personal custody of the note, and control thereof, together with the revenues in his hands as attorney in fact and trustee for its payment, no legal cause of action arose in favor of the beneficiaries in the trust during the life of E. R. Hunter, deceased, and could not have arisen until a breach and repudiation of the trust by E. R. Hunter, deceased, within the knowledge of the beneficiaries.

"Plaintiff further alleges that P. A. Bywaters and the other beneficiaries to whom the note in controversy belong, having full confidence in E. R. Hunter by reason of relationship herein alleged, trusted him to apply his interest in the revenues of the J. K. Bywaters estate to the payment of said note, and did not know that this had not been done until after his death, when an audit of the books and papers of the estate kept by him disclosed that said note, which was in his custody and control, had not been fully paid.

"Wherefore, plaintiff says that laches and limitations are not available as a defense in this suit on account of the trust relation that E. R. Hunter, deceased, bore to the beneficiaries, and particularly with reference to the note in controversy, and that by reason of the trust relation and acts of said E. R. Hunter as herein plead, his estate, and defendant as representative of said estate are estopped to plead limitation as a defense to this action."

The trial court sustained defendant's special exceptions Nos. 2 and 3; and upon plaintiff's failure to amend the cause was dismissed, and plaintiff has appealed.

### Opinion.

To the action of the trial court in sustaining defendant's special exception No. 2, appellant assigns error as follows:

"First: The court erred in sustaining defendant's special exception number two to plaintiff's petition, and in thereby holding that plaintiff's cause of action was barred by the four years statute of limitation, for the following reasons, as shown by plaintiff's pleadings:

"a. By common consent of all the beneficiaries therein, E. R. Hunter retained the sole custody and control of the note sued on up to the time of his death on the 23rd day of July, 1932, and after his death this note was found among other papers belonging to the J. K. Bywaters heirs and legatees which were in the custody and under the control of the said E. R. Hunter at the time of his death.

"b. By reason of his custody and control of the aforesaid note and of the relationship existing between E. R. Hunter as a cousin of some of the beneficiaries and as a nephew of others of the beneficiaries, a trust was created and reposed in the said E. R. Hunter in respect to the note sued on, which was not breached or repudiated by him within the knowledge of the beneficiaries therein, who did not know that the note sued on was not paid until after its discovery among the papers of the J. K. Bywaters estate in the custody of E. R. Hunter after his death."

Under this assignment appellant contends that limitation did not begin to run on the note until the death of E. R. Hunter because: (1) There was a trust relation, as to the note, existing between E. R. Hunter and beneficiaries of the note, which continued unrepudiated to the time of his death and which prevented the accrual of a cause of action on the note. (2) That E. R. Hunter owed the duty to apply, as credits on the note, his interest in collections to the credit of the J. K. Bywaters estate, in accordance with his signed agreement upon the back of the note, which duty continued unrepudiated to the time of his death, and which prevented the accrual of a cause of action on the note.

We do not believe that the contentions of appellant can be sustained. That the beneficiaries of the note were relatives of and had confidence in E. R. Hunter, by reason of which they trusted him with its care and custody, did not create or effect such a trust, if any, as would alter or supersede the legal obligation, that of debtor and creditor, declared by the terms of the note, as to the time of its maturity, or that would suspend the accrual of their cause of action upon default in payment of the note at maturity.

The stipulation signed by E. R. Hunter on the back of the note effected, as additional security for its payment, an assignment of his interest in collections to the credit of the J. K. Bywaters estate, and as authorizing the two attorneys in fact, Graves Shull and Walter Bywaters, to whom the note was made payable, to apply his interest in such collections when received, as credits on the note. As the result of which assignment, especially after the note was delivered to his possession, Hunter owed a moral duty to apply, as credits on the note, his interest in all collections coming into his hands from the J. K. Bywaters estate, and it may be assumed that such collections, if any, received by him and not so applied were held by him to be applied as credits on the note. But it does not appear to have been the intention of the parties that the assignment should operate to release or modify Hunter's legal obligation to pay the note according to its terms. The assignment op-

erated as additional security, but did not have the effect to destroy the relation of debtor and creditor as expressed by the terms of the note; nor did Hunter's subsequent possession of the note effect such a result.

■ This suit is not one in equity for an accounting or otherwise, but is purely an action at law upon the purchase-money note and to foreclose the vendor's lien on the land, with respect to which the provisions of articles 5520 and 5521, R. S. 1925, are expressly applicable, reading as follows:

"Art. 5520. Actions by vendors.—There shall be commenced and prosecuted within four years after the cause of action has accrued and not afterwards, all actions of the following description:

"1. Actions to recover real estate by virtue of a superior title retained by the vendor in a deed of conveyance or purchase money note.

"2. Actions for the foreclosure of the vendor's lien on real estate.

"Art. 5521. Presumption of payment.—Purchase money or mortgage lien notes relating to real estate shall conclusively be presumed to have been paid after four years from the date of maturity of such notes unless extended as provided by law."

The 42nd Leg. c. 136, p. 230, effective August 21, 1931, amended article 5520 (Vernon's Ann. Civ. St. art. 5520) and repealed articles 5521 and 5523. It appears from the provisions of this act that the substance of the repealed articles 5521 and 5523 was re-enacted by and into the amendment of article 5520, especially in so far as applicable to the facts we have under consideration. But it is not necessary for us to determine the changes made by the act, since it could not have had the effect to revive appellant's cause of action on the note in question, for reason that the bar of four years' limitation had already been completed long prior to passage of the act. The note was due September 1, 1922, and the right to the defense of four years' limitation became complete and vested in E. R. Hunter on September 1, 1926, and could not be taken away by a subsequent act of the Legislature, passed in 1931. Richardson v. Liberty Independent School District (Tex.Com.App.) 39 S.W.(2d) 823; Mellinger v. City of Houston, 68 Tex. 37, 3 S.W. 249; Cathey v. Weaver, 111 Tex. 515, 242 S.W. 447; Fannin County v. Renshaw (Tex.Civ.App.) 29 S.W.(2d) 476; 28 T. J. 83, § 8; 17 R. C. L. 674.

The appellant cites the case of Guardian Trust Co. v. Studdert (Tex.Civ.App.) 36 S.W.(2d) 578, affirmed on writ of error (Tex.Com.App.) 55 S.W.(2d) 550, as sustaining his contention that limitation did not begin to run on the note until after the death of E. R. Hunter. The issue in that case was whether an express trust between Studdert and Hamilton ceased and the relation of debtor on the part of Hamilton and that of creditor on the part of Studdert began, as starting the statutes of limitation to run, at the time Hamilton surrendered to Studdert the latter's note, his corporate stock, and a statement showing dividends collected thereon, by Hamilton under the trust, in excess of the purchase-money note. It was held that a reasonable construction of the testimony showed that the parties themselves intended by this settlement to change the trust relation to that of debtor and creditor, and that limitation operated against such excess dividends remaining in the hands of Hamilton after the termination of the trust. The case is distinguishable from appellant's case in that the facts presented by appellant show that the relation of debtor and creditor was created by the contract in which Hunter's note was executed, and that such relation as to that transaction continued to the time of his death.

■ Under his second assignment appellant contends that as to a vendor's lien note, more than four years past due, the statutory conclusive presumption of payment has no application between the original parties to the debt, in the absence of intervening rights of third parties. As sustaining this position appellant cites Bellamy v. Oklahoma Farm Mortgage Co. (Tex. Com.App.) 278 S.W. 180, 182, affirming the opinion of this court in 265 S.W. 1070, and other cases of like import. The holding in these cases is to the effect that where the rights of third parties are not affected the parties may, if they choose to do so, renew the debt and lien in any other lawful manner, as well as that provided by the statute, even though the debt and lien be barred and payment conclusively presumed by the statute. These holdings are not based upon the theory that the provisions of the statute have no application as between the parties to the debt, but upon the ground that the statutes were not intended to, and do not, abridge the right of the debtor to

legally rebind himself, if he chooses to do so, to pay his just debt, for which he remains morally bound, though he has been legally released by virtue of the provisions of the statute. It is the renewal contract and not the old contract that is enforced. That the new contract is upheld, not upon the idea of nonapplication of the statutes as between the original parties, but upon the ground that the debtor has voluntarily bound himself to pay his just, but outlawed, debt, is shown by the following language of Judge Harvey in the Bellamy Case: "In such a case the presumption of payment becomes a mere fiction of law of which the party, if he choose, may take advantage. But if he should choose to recognize his moral obligation to pay the outlawed debt, and to bind himself by contract to pay same, he may do so."

Hunter's possession of the note, in the absence of any further promise or special undertaking on his part, is not thought to be sufficient to estop him, or the legal representative of his estate, from asserting the defense of limitation.

We do not think that error is shown in the action of the trial court sustaining defendant's special exceptions 2 and 3 to plaintiff's petition, and the judgment will be affirmed.