**HOARD et ux. v. McFARLAND et al.**
(No. 2354.)

(Court of Civil Appeals of Texas. Texarkana. March 10, 1921. Rehearing Denied March 17, 1921.)

1. **Vendor and purchaser ⚎85—Cancellation of vendor's lien sufficient consideration for reconveyance.**

Cancellation of vendor's lien note before expiration of period of limitation *held* a sufficient consideration for reconveyance of land to vendor.

2. **Vendor and purchaser ⚎278—Statutes relating to limitations held not to repeal statute providing for grace on negotiable notes.**

Rev. St. 1911, arts. 5693–5695, as amended in 1913 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5693–5695), relating to period of limitations for enforcement of vendor's lien and for recovery of land by a vendor who has reserved title, did not repeal article 593, providing for three days of grace on all notes negotiable or assignable by law, or affect the applicability of such statute to notes secured by deeds of trust and mortgages.

3. **Vendor and purchaser ⚎278 — Vendor's lien continued during period of grace.**

As respects limitations, vendor's lien continued, not only to date of maturity specified in note secured thereby, but also during the three-day period of grace provided for by Rev. St. 1911, art. 593.

4. **Limitation of actions ⚎4(2)—Legislature could extend life of existing vendor's lien.**

The Legislature was empowered to extend an existing vendor's lien for additional four-year period.

5. **Constitutional law ⚎105—Legislature has no power to restore vested right lost by limitation.**

When a vested right has been lost by limitation, the Legislature has no power to restore it.

6. **Constitutional law ⚎106—No vested right in remedy.**

No one can have a vested right, one that cannot be disturbed without the consent of the parties, in a remedy.

7. **Constitutional law ⚎106—Legislature may change judicial procedure without enlarging burden of debtor or diminishing vested rights.**

The Legislature has the right to modify and change the judicial procedure by means of which contract rights are enforced, so long as the modification does not incidentally enlarge the burden of the debtor or diminish the vested rights of the parties in contracts then existing.

8. **Constitutional law ⚎42—Protective constitutional restrictions can be invoked only by one whose rights are affected.**

No one may invoke protective constitutional restrictions who has not sustained some practical injury resulting from the infraction of his legal rights.

9. **Constitutional law ⚎107, 171—Limitation of actions ⚎6(5)—Vendor and purchaser ⚎278—Statute giving vendor retaining superior legal title four years to foreclose vendor's lien on land after vendor's lien notes are barred held valid.**

Rev. St. 1911, art. 5695, as amended in 1913 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5695), giving the vendor who has reserved superior legal title the right (if exercised within four years from November 18, 1913, the date of taking effect of the amendment) to enforce claim against the land on purchaser's default by

judicial foreclosure proceedings, although the right to foreclose vendor's lien on the land had on November 18, 1913, been lost by limitation, *held* valid, since such statute merely revives or restores an old remedy for enforcing a valid existing claim, that is, revives or substitutes the right to foreclose a vendor's lien for the right to sue for and recover the land by virtue of the superior legal title retained in the vendor, and does not restore a contract or property right which has been lost by lapse of time, and thereby affect a vested right.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Action by Joe Hoard and wife against Oscar McFarland and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Price & Beaird, of Tyler, for appellants. Nat W. Brooks, of Tyler, for appellees.

HODGES, J. On February 1, 1906, the appellees Brown and McFarland sold to Joe Hoard a tract of land consisting of about 33 acres, and took in payment Hoard's four promissory notes for $125 each, the first one due November 15, 1906, and the others in three annual installments thereafter. The last note matured November 15, 1909. The usual vendor's lien was reserved in the deed and retained in each of the notes. Hoard took possession of the land and occupied it as the family homestead. The first two notes to mature were paid; the other two were never paid. On February 8, 1915, Hoard reconveyed the land to Brown and McFarland in consideration of the cancellation of the two unpaid notes. His wife did not join in that conveyance. After the reconveyance Hoard and his family continued to occupy the premises as tenants of Brown and McFarland, and paid rent for two years. In the spring of 1917 Brown and McFarland sold approximately half of the land to J. H. Lee. Before purchasing, Lee informed Hoard of his intention and asked about the title. Hoard told Lee that he had deeded the land back to Brown and McFarland and did not claim it. Lee thereafter completed the purchase and rented his part of the land to Hoard and two nephews for the year 1917. Lee continued in the undisturbed possession of his tract until the filing of this suit in January, 1920. The suit is by Hoard and his wife for the recovery of the entire tract of 33 acres. Brown and McFarland and Lee are all named as parties defendant. It is alleged in the petition that at the time Hoard reconveyed the land to Brown and McFarland it was the family homestead; that the two purchase-money notes to satisfy which the reconveyance was made were then barred by the statute of limitation; that the vendor's lien and the right to assert the vendor's superior legal title had become extinct by lapse of time; and that the deed executed by Hoard without the concurrence of his wife conveyed no title.

In a trial without a jury the court found the facts to be as above stated, but concluded that the rights of the vendors Brown and McFarland were not extinct on the date of the deed to them by Hoard, and that he had the right to reconvey the property in satisfaction of the unpaid purchase money. The correctness of that legal conclusion is assailed in this appeal. It is conceded by the appellees that if the notes and all rights reserved by Brown and McFarland in the contract of sale were lost by limitation the appellants have a right to recover that part of the land which Brown and McFarland still claim. They contend, however, that Hoard and wife are estopped to claim title to the land subsequently purchased by Lee.

The first question which presents itself is, Did Brown and McFarland have any legal claim against the premises because of the unpaid purchase-money debt at the time Hoard reconveyed to them? The determination of that question requires an examination and construction of articles 5694 and 5695 of the Revised Civil Statutes of 1911, as amended in 1913 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5694, 5695). Under the law as it existed at the time those last two notes matured, both the debt and the lien would be barred in four years after their maturity. But the right of the vendors holding the superior legal title to sue for the reconveyance of the land in default of the payment of the purchase money continued six years longer. Rev. Civ. Stat. 1911, art. 5693. At the regular session of the Legislature held in 1913, articles 5693, 5694, and 5695 were again amended. By that amendment both the lien and the right to enforce the superior legal title expired with the debt, unless an extension was contracted for in accordance with the existing law. In article 5695 a provision was inserted allowing the holders of notes made subsequent to July 14, 1905, four years from the time the act took effect within which to foreclose their liens, if not then barred, and the holders of the superior legal titles were given one year after the act became effective to enforce that claim by suing for the recovery of the land or to secure a contract of extension. That act took effect on July 3, 1913. On that date the note here involved, which matured in 1908, was barred by the four-year statute of limitation, and the lien evidenced by it had also expired, but the superior legal title still remained in the vendors. The note due in 1909 was not then barred, and all the rights evidenced by it remained alive.

[1] At the first special session of the Legislature which convened in August, 1913, article 5695 was again amended. This last amendment contained substantially the same provisions for extending liens and the right to sue for the recovery of the land on contracts made subsequent to July 14, 1905. It contained a further provision that if any

such obligations executed subsequent to July 14, 1905, were barred by the four-year statute of limitation on the 30th of June, 1913, "the owners thereof shall have four years within which to bring suit to enforce the lien securing the same." Subsequent portions of the act limited the right of those who held the superior legal title to sue for and recover the land in default of the payment of the purchase money to twelve months after the act took effect. This act became effective on November 18, 1913. The legal effect of this amendment, if valid, was to revive the lien theretofore lost as to the note due in 1908, and to extend it four years from November 18, 1913. The note due in 1909 expired by limitation on November 15, 1913, if we exclude the three days of grace. If the three days of grace be allowed, the note was a valid and subsisting obligation on the day that amendment went into effect. But if the debt was barred or the lien lost on November 15, this note occupies the same attitude as the note which matured in 1908. If this last note and lien were not barred at the time this amendment took effect, the period of limitation was extended, and it evidenced an incumbrance upon the land at the time Hoard reconveyed. Its cancellation furnished a sufficient consideration for his reconveyance. Article 593 of the Revised Civil Statutes of 1911 provided for three days of grace on all notes negotiable or assignable by law. That article was in effect in 1913, and under its provision the debt evidenced by the note due November 15, 1909, was not barred until the end of November 18, 1913.

Appellants contend, however, that although the debt may have existed the lien had been lost. They rely upon the language used in article 5695 of the Acts of the Regular Session of 1913, which provides:

"The date of maturity set forth in the deed of conveyance or deed of trust or mortgage or the recorded renewal and extension of the same shall be conclusive evidence of the date of maturity of the indebtedness therein mentioned."

[2-4] All notes payable at a definite time specify a date when payment is to be made. This is commonly called the day of maturity, and is usually so referred to in accompanying deeds and mortgages. That is the contract date of maturity. The statute allowing days of grace adds three more days to the contract date. The longevity of the debt is correspondingly extended. Watkins v. Willis, 58 Tex. 523. There does not appear to be in the Acts of 1913 any well-defined purpose to repeal generally article 593; neither is there presented any reason why that article should no longer apply to notes secured by deeds of trust and mortgages. If in this instance the debt continue three days beyond the contract date, it would be absurd to hold that the lien created to secure its payment did not continue for the same period. Tullos

229 S.W.—44

v. Mayfield, 198 S. W. 1073. If our view be correct, then the note due in 1909 was a valid and subsisting obligation, secured by a lien on November 18, when the act of the special session went into effect. It was then within the power of the Legislature to extend that lien four years longer, which it undertook to do. Such an extension would carry the lien beyond the date when this reconveyance was made to the appellees Brown and McFarland.

But let us concede, for the sake of argument, appellants' contention that both notes were barred. Would their situation be any better? If at the time this act of the special session of the Legislature took effect both of the unpaid notes were barred, and the right to foreclose the lien as it theretofore existed had also expired, the vendors still held the right, as the owners of the superior legal title, to sue for and recover the land. That form of remedy, however, was not available to support the reconveyance made by Hoard, because under the amendment it had also expired at the time his deed was made. Hence in the assumed situation, unless the Legislature had the power to create or revive the right of foreclosure in such cases, or to substitute that remedy for the right to sue for and recover the land, Hoard's deed was without any legal consideration. We may treat this special session act of the Legislature as an effort to confer upon those who then held the superior legal title to land the right to enforce their claims by judicial foreclosure proceedings. Chief Justice Key, in Cathey v. Weaver, 193 S. W. 491, had this precise question under consideration, and, after discussing at some length the principles involved, held that the Legislature did not have that power. Associate Justice Rasbury, however, in a later case (McCutcheon v. Smith, 194 S. W. 831), reached a contrary conclusion upon similar state of facts. Writs of error were granted in both of those cases, but neither has yet been decided by the Supreme Court.

[5-9] In the light of other decisions heretofore rendered, it must be conceded that when a vested right has been lost by limitation the Legislature has no power to restore it. When a burden has once been removed in accordance with some established legal method, the Legislature cannot replace it. Mellinger v. City of Houston, 68 Tex. 37, 3 S. W. 249. Any attempt to do so would be tantamount to an effort to create on original obligation where none existed. But was this amendment an attempt to replace a burden which had once been removed? Did it attempt to impose an obligation where none existed? Did it require the debtor to do something more than he was by his contract compelled to do in order to hold his land free from the burden of the purchase-money debt? If it did not, then what provision of the Constitu-

tion did it violate? It did not impair the obligation of. this class of contracts, because it neither increased the burdens of the debtor nor diminished the contract rights of the creditor. It was not retroactive, because it was not designed to have any retrospective operation. It was not applicable only as a future remedy. If the Legislature may under such conditions create a new remedy for enforcing a valid subsisting claim against property and apply it to existing contracts, it may revive and apply an old remedy of the same class which had expired by limitation. It is generally considered as settled, in this state, at least, that no one can have a vested right, one that cannot be disturbed. without the consent of the parties, in a remedy. 8 Cyc. pp. 922, 923; McCutcheon & Church v. Smith, 194 S. W.. 831, and cases there cited. The lawmaking power has·the right to modify and change the judicial procedure by means of which contract rights are enforced, so long as the modification does not incidentally enlarge the burden of the debtor or diminish the vested rights of the parties in contracts then existing.

There is an important distinction to be noted in considering a legislative act restoring a contract or property right which had been lost by lapse of time and one which merely restores an old remedy for enforcing an existing claim. In Mellinger v. City of Houston the court was considering an act of the Legislature which prohibited the owners of property from pleading the bar of limitation in actions barred at the time the act took effect. In that instance the Legislature undertook to restore a debt after the debt had been extinguished by lapse of time. That act imposed a debt or burden where none existed. Here no such legal consequences follow. In this case Hoard at the time of his purchase agreed to pay a certain price for the land, and gave his vendors a mortgage lien on the land to secure that promise. He further agreed that they should withhold the legal title till all the notes were paid. The deed he received from his vendors conveyed only the equity of redemption. The entire fee was not to pass to him till he had paid the debt in full. When the notes became barred the debt could not be enforced against him as a personal liability, and recourse against, the property by the usual judicial foreclosure proceedings was also lost under the law then existing. But the vendors still held the superior legal title. This was an existing valid claim against the land when the act in question became effective. The retention of the superior legal title in the vendor is for the purpose of securing the payment of the purchase price. The burden resting upon the land purchased by Hoard must be measured by the amount of the unpaid purchase-money debt. His vendors had a right to sue for and recover the land at any time after the maturity of the notes, subject only to Hoard's right of redemption by the payment of the entire balance due. While the courts have treated the superior legal title retained by vendors who sell real estate on time as distinct from the lien created, the two incumbrances are practically the same when considered as security. They bear with equal weight upon the property incumbered; it requires no more from the debtor to discharge one than it does to remove the other; a suit to recover the land is no less onerous upon the defaulting debtor than would be a suit to foreclose the mortgage lien.

The practical difference between the two · remedies lies in the differing forms of the actions. The defendant has the same time within which to answer each, the same opportunities for defending and each may be defeated, when the purchase money is unpaid, only by the payment of the balance due. The question then arises: What right of the debtor has been infringed which the lawmaking power was prohibited from molesting? It is, not every legal right which one may claim that is protected by these constitutional provisions against legislative encroachment. Without undertaking to enumerate those which are, it is sufficient here to say that exemption from a certain form of judicial procedure for the purpose of collecting an existing debt is not one which cannot be disturbed. What the Legislature here did was to create a new remedy by which a certain class of creditors, those who hold the superior legal title, might enforce existing valid incumbrances of that character. The creation of that remedy did not impose any additional burden upon the debtors in such contracts. If that class of debtors remains uninjured, they can have no just grounds for complaint that the legislation was oppressive. It is elementary that no one may invoke protective constitutional restrictions who has not sustained some practical injury resulting from an infraction of his legal right. We therefore conclude that the Legislature had authority to create a new or to revive the old remedy by foreclosure and apply it to all contracts in which the vendor's superior legal title still existed at the date the act took effect. From this it follows that there was a valid outstanding incumbrance upon the land at the time Hoard reconveyed to Brown and McFarland, and the removal of that incumbrance constituted a valid consideration sufficient to sustain his deed.

The judgment is affirmed.