DICKINSON v. DYSART et al. (No. 6671.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 25, 1922. Rehearing Denied Feb. 15, 1922.)

1. Vendor and purchaser ⬥278—Plaintiff held to have four years after passage of act to sue on vendor's lien notes.

Rev. St. art. 5695, as amended by Acts 33d Leg. (Sp. Sess. 1913), c. 27, gave holder of vendor's lien notes, executed August 25, 1909, and maturing four years from their dates, four years after it became a law in which to renew or bring action, and action brought December 14, 1914, was not barred by limitations, notwithstanding article 5688, subd. 2.

2. Vendor and purchaser ⬥274(3)—Waters and water courses ⬥232—Mortgagee of district and holder of vendor's lien notes held bound by covenant to furnish water.

Mortgagee of irrigation district, which took vendor's lien notes as security, was bound by a covenant in the deeds to the makers of the notes to furnish water to enable grantees to raise crops, and grantees were entitled in action on the notes to set off damages sustained by failure to furnish water.

3. Waters and water courses ⬥249—Statement of defendant that he did not intend to operate irrigation system held tantamount to refusal to supply water.

Where grantees went to successor of grantor concerning water, and the latter made statements from time to time that he did not intend to operate the irrigation system, and that those interested must organize an irrigation district or go without water, there was in effect a demand to supply water under a covenant in the deeds and a refusal thereof.

4. Parties ⬥59(2)—Suit may proceed in name of original parties without making purchaser pendente lite a party.

If the interest and title of plaintiff in action on vendor's lien notes passed to a third person pendente lite, such third person could be made a party and prosecute the suit, or, on failure to do so, the suit could proceed in the name of the original parties.

5. Pleading ⬥237(6)—Court held to have erred in refusing to permit amendment of petition.

Where petition in action on vendor's lien notes alleged that D., Jr., was the grantee, and executed the notes, court erred on the trial in not permitting plaintiff to amend on objection to evidence by alleging that D., Sr., was the grantee in the deed, and executed the notes, and that D., Sr., had died, and D., Jr., was claiming the property, and that it was subject to the lien of the notes; proper parties being before the court.

6. Pleading ⬥236(3)—Court cannot arbitrarily disallow amendments during trial.

While it is provided by statute and rules of the court that the allowance of trial amendments are within the discretion of the trial court, the court is required, in the interest of justice, to grant leave to amend in proper cases, and it is error to arbitrarily refuse.

Appeal from District Court, Cameron County; W. B. Hopkins, Judge.

Suit by Thos. N. Dysart and another against Obed E. Dickinson, Jr. From a judgment for part of the relief demanded, both parties appeal. Reversed and remanded.

Canales & Davenport and O. C. Dancy, all of Brownsville, for appellant.

Spears & Montgomery, of San Benito, for appellees.

COBBS, J. This suit was instituted by appellees to recover on three distinct series of vendor's lien notes by petition filed December 14, 1914. The notes sued on, and upon which a foreclosure was sought, were made payable to San Benito Land & Water Company, the vendor reserving vendor's lien in all the deeds. The first series were for $667 each, due and payable on the 28th day of April, in the years 1910, 1911, and

1912, respectively, given as part payment of land conveyed to appellant, Obed E. Dickinson, Jr., by said water company. The second series were for $500 each, due and payable on the 25th day of August, 1910, 1911, and 1912, respectively, as part payment of 40 acres conveyed to Obed E. Dickinson, Sr. The third series were for $167 each, payable on the 25th day of August, 1910, 1911, and 1912, respectively, as part payment of 10 acres of land conveyed to Obed E. Dickinson, Jr.

Appellees sued as the legal owners of said notes, claiming to have purchased same before maturity thereof, prayed for judgment and foreclosure of the lien.

Appellant pleaded the statute of limitations of four years against any recovery on the first note of each series; then interposed a plea of failure of consideration, because each of the conveyances contained express covenants that the land should be supplied with water for irrigation from the grantor's irrigation system; that appellees subsequently acquired said notes, as well as said irrigation system, and while owners thereof breached the covenant to supply water for irrigation; and appellant's damages for breach of covenant were alleged to be substantially equal to the amount of the notes in the suit, by which damages he desired to set off appellees' alleged demand.

An issue was made upon the pleading raised by the evidence that there was a variance between the pleading and evidence, because the notes offered in evidence to support appellees' allegations were executed by Obed E. Dickinson, Sr., and not by Obed E. Dickinson, Jr.

The trial was before the court without a jury. The court overruled the pleas of the statute of limitations to the first note of each series, and rendered judgment thereon in favor of appellees for the full amount due on the first and third series of notes, with foreclosure of the vendor's lien. As to the second series of notes, judgment was rendered in favor of appellant on account of the variance in the notes sued on and the pleading. Both parties appealed from the rulings of the court, and assign errors thereon.

[1] The first error assigned and briefed by appellant complains of the ruling of the court is not sustaining the plea interposed of the statute of limitation of four years to the series of notes executed, on the several days of April 28, 1909, and August 25, 1909, maturing four years from their respective dates, and prior to December 14, 1914, date of commencing the suit.

It is thus contended the notes were barred by the statute of limitations requiring suits on contracts in writing to be instituted within four years after cause of action accrued, and not afterwards, and in support thereof he cites article 5688, subd. 2, R. S.; Cathey v. Weaver, 193 S. W. 490; Mellinger v. City of Houston, 68 Tex. 37, 3 S. W. 249. Article 5695, as amended (see Acts 1913, Sp. Sess. 33d Leg. p. 39), gives four years after said act became a law in which to renew or sue upon the contract. The act was passed August 18, 1913, and took effect on November 18, 1913. McCracken v. Sullivan, 221 S. W. 336; Hoard v. McFarland, 229 S. W. 687. We overrule this assignment.

It is assigned and contended that the court erred in refusing to sustain appellant's plea setting off the amount of the notes sued on by appellant's damages sustained on account of the breach of contract on appellees' part in not supplying sufficient water for irrigating the land in accordance with the terms of the covenants running with the land that obligated appellees to do so, said damages growing out of the same transaction.

We copy from appellant's brief all the evidence submitted in his brief under which he claims damages arising from the breach of contract:

"Evidence.

"(1) The covenants which appellant alleges were breached were contained in identical terms in each of the deeds described in appellees' petition, in which the vendor's lien to secure the payment of the notes sued on are reserved. These obligated San Benito Land & Water Company, the grantor in said deeds, subject to certain stipulations and conditions fully recited in said deeds, 'to endeavor to furnish water from the Rio Grande for the irrigation of said land in sufficient quantities, in connection with the ordinary natural rainfall, to enable grantee or his assigns to make each year a crop or crops on said land.'

"(2) The San Benito Land & Water Company undertook to comply with this and similar covenants in other deeds of conveyance by constructing a large irrigation system, consisting of a pumping plant, to lift the water from the Rio Grande, and a system of main and lateral canals to distribute the water to lands entitled to receive it.

"(3) About November 1, 1909, San Benito Land & Water Company executed a deed of trust to appellees on its said entire irrigation system, and transferred to them the vendor's lien notes sued on herein, and $300,000 to $400,000 in similar notes, as security for a loan of $750,000 evidenced by first mortgage bonds.

"(4) The San Benito Land & Water Company, about May 1st, executed another deed of trust and assignment to appellees of the same property conveyed and transferred by the 'first mortgage,' described in paragraph 3, above, to secure another bond issue of $1,050,000, of which only $350,000 was actually sold and delivered.

"(5) On July 31, A. D. 1913, appellees, by an amended bill of equity, in the United States District Court for the Southern District of Texas, in equity case No. 40 on the docket of that court, sought to subject all the property described in both of said deeds of trust above described, including the entire irrigation system of San Benito Land & Water Company and the notes in suit, to foreclosure proceedings to en-

force the payment of the outstanding bonds issued under the deed of trust of May 1, 1910.

"(6) The United States District Court, Southern District of Texas, entered decree of foreclosure in cause No. 40, substantially as prayed for by appellees, as complainants in that case, and ordered all the property involved in this case sold by a special master, subject to appellees' deed of trust of November 1, 1909. At said sale, on January 16, 1917, appellee Thos. N. Dysart, as trustee, became the purchaser of all the property sold, including the entire irrigation system of San Benito Land & Water Company, and the notes here in suit, subject to the lien created by the deed of trust from San Benito Land & Water Company to appellees by the deed of trust of November, 1909. This sale was duly confirmed by the court.

"(7) On April 14, 1917, appellee Thos. N. Dysart, as trustee for all second mortgage bondholders of San Benito Land & Water Company, conveyed the entire irrigation system of San Benito Land & Water Company to Cameron County irrigation district No. 2, for a consideration of $360,000 in bonds of the district.

"(8) On April 14, 1917, appellee Thos. N. Dysart, as trustee, assigned to Wm. R. Compton, Daniel K. Catlin, and Thos. N. Dysart, as trustees for San Benito Land & Liquidation Association, all estates, rights, choses in action, good will, franchises and immunities of every description acquired by him as trustee, except that conveyed by him to Cameron County irrigation district No. 2, on April 14, 1917; said assignment expressly including all vendor's lien notes executed by purchasers of land acquired by him under the decree of the United States District Court, Southern District of Texas.

"(9) After the purchase of the San Benito Land & Water Company's Irrigation System, and the vendor's lien notes here in suit, by Thos. N. Dysart, trustee, at the special master's sale, under decree of foreclosure above stated a committee of those owning land situated as was appellant's land with regard to its right to receive water from San Benito Land & Water Company had many conferences with appellee Dysart with regard to his supplying water, and Dysart stated to this committee at different times that he and his associates did not intend to operate the irrigation system; that they had sunk all the money that they were going to sink in it; and that those interested must organize an irrigation district, or go without water.

"(10) In order to obtain water for irrigation, Cameron County irrigation district No. 2 (now Cameron County water improvement district No. 2), was organized under the laws of Texas providing for irrigation districts by the landowners entitled to receive water from San Benito Land & Water Company; said irrigation district including the lands involved in this suit; said district issued its bonds in the sum of $600,000, as provided by law, and, with a part of the proceeds of such bond issue, purchased the irrigation system formerly owned and operated by San Benito Land & Water Company from appellee Thos. N. Dysart, trustee, as above stated.

"(11) The lands involved in this suit absolutely require irrigation, and are worthless for farming purposes without irrigation. The right to receive water from an irrigation system under reasonable rules and regulations add materially to the value of the land, and the value of the covenant of irrigation to appellant's land was at least equal to the amount of the notes in suit against each tract of land involved in this suit.

"(12) Appellees knew of the covenant for irrigation contained in the deeds from San Benito Land & Water Company to appellant when they acquired the notes sued on herein, and at all times thereafter."

[2, 3] Appellant's brief on the subject does not clearly show, but sufficiently, that demand was made upon the proper person to supply water and the amount of damages suffered by reason of such failure, only that the value of the covenant of irrigation to appellees' land was at least equal to the amount of the note in the suit against each tract. For that reason we have quoted all the testimony appellant presents to us in his brief on the subject as the only basis of his claim for damages, and we will therefore largely consider the case from appellant's own standpoint. We think the covenant to supply the water is a sufficient basis for him to enforce his demand for water for irrigation purposes that binds the appellees. From the conferences with appellee Dysart with regard to supplying water, and his statement from time to time that he did not intend to operate the irrigation system, and that those interested must organize an irrigation district or go without water, must be considered tantamount to a demand to supply water and a refusal.

The record does not show what use was made of the property, if any, during the time he was without water, or the value of the use. We think it is sufficiently shown that, if any demand had been made for water, if the foregoing does not show such, it would not have been supplied, as it would not have been furnished, as shown by appellee Dysart's testimony.

It was shown by the testimony of Col. Heywood that the $750,000 was borrowed "and used to retire the first liens against the company's land, and the balance was used to complete the canal system, and that one of the principal reasons for seeking the bond issue was the inability of the company to supply water to its vendees; that the land sales and development and demands for water had far exceeded the expectations of the company, and the ability to extend the system fast enough to keep pace with the demands for water. Col. Robertson said that plaintiffs knew before the transfer of the vendor's lien notes to them as collateral that for a short time there was difficulty in furnishing water to the company's grantees, but they also knew the company gave better service than the average irrigation enterprise operating in the United States."

Appellees strenuously insist that no breach of the contract was shown by appellees' statement or any other fact shown in evidence, and cites what they claim to be in point to sustain him, the cases of Hardeman-King Lumber Co. v. Hampton Bros., 104 Tex. 589, 142 S. W. 867, and Kilgore v. Baptist Ass'n, 90 Tex. 143, 37 S. W. 598. In the former case Mr. Chief Justice Brown said, quoting the Kilgore Case above cited:

"The evidence was sufficient to justify the conclusion that defendants in error intended to abandon the contract, but the evidence is uncontroverted that they were engaged in performing the work under the contract. The intention or threat to quit did not constitute a breach of the contract, and the plaintiffs in error, having refused to proceed with their part of the contract, had no right of action against Hampton Bros. Kilgore v. N. W. T. Baptist Educational Ass'n, 90 Texas, 143."

In the case just above cited the court said:

"If Kilgore in this case were proceeding in good faith to perform the work, although while so engaged he might have announced that he intended to abandon it at some future date, the other party would not have had the right to declare such intention of abandonment to constitute a breach of that contract, because the performance of it was then in the course of completion. The ground upon which it is held that when one declares that he will not perform a contract, the performance of which is to begin in the future, the other party may accept this declaration as a breach is that the contract is thus repudiated and, so far as one party can do so, the contractual relation between the parties is destroyed. Clark on Contracts, 645; Zuck v. McClure, 98 Pa. St. 545. When the promisor is in good faith, actively engaged in the performance of a contract, a declared intention to abandon it at some future time, however positively made, could not operate to terminate it, because he at the same time would by his act of performance be in a more emphatic manner affirming the existence of the contract and maintaining the terms thereof."

These cases, instead of supporting appellee's contention, are authority in support of appellant. Appellee declared his intention not to furnish water to comply with his contract, and has not thereafter performed or commenced to perform it, and is not doing so now; on the contrary, without furnishing any water, has proceeded to subject appellant's land to the payment of the notes that appellant executed to secure this very right. And appellant will not be denied relief to the extent of damages, if any, suffered by him, because appellee breached the contract by his expressed refusal to perform. It is not denied that appellant has this water right running with the land; for that matter, the suit is directly upon a contract based upon that right which, by his very suit based thereupon, he affirms.

[4] Upon appellant's second assignment, which is in fact raising a question of proper parties, Thomas N. Dysart and St. Louis Union Trust Company, trustees, as plaintiffs, and Obed E. Dickinson, Jr., and his wife, as defendants, were the only parties to the suit from the beginning. So, if during the pendency of the suit appellees' title and interest passed to another, then such owner and holder could be made a party, and thus prosecute the suit. Upon failure so to do, being a purchaser pendente lite, the suit could proceed in the name of the partes to the suit without their presence and in the name of the parties to the record.

[5] The court erred in excluding the notes on appellant's objection, and in refusing to allow appellee to file the pleading to explain and correct the alleged variance between the deed, notes, and appellee's pleading, and upon such amended pleading to hear the evidence thereon. This error is presented by appellee's cross-assignment.

The petition alleged that Dickinson, Jr., was the grantee in the deeds, and that he executed the $500 notes. The deed was to Obed E. Dickinson, Sr., and he executed the notes. Appellant alleged that the deed was to Dickinson, Sr., and that he executed the notes which were the same land and the same notes described in appellee's petition.

"Appellees' bill of exception sets out that, before they had closed their evidence in chief, they offered in evidence the deed by San Benito Land & Water Company to Obed E. Dickinson, Sr., which is set out and two of the $500 notes, which are set out; that they offered in evidence the allegations of appellant's amended original answer and cross-bill that the land was conveyed to Dickinson, Sr., and the notes were executed by him, and that the land and notes were the same described in appellees' petition; that appellant objected to said evidence, which objection was sustained by the court, and thereupon appellees asked leave to file a trial amendment, describing said deed as to Dickinson, Sr., and that said notes were executed by him; that 'Obed E. Dickinson, Sr., died at a time not known to plaintiffs, and plaintiffs do not know whether he died testate or intestate, or whether any administration has been sued out on his estate, or in what manner defendant acquired said land, but same was acquired with said purchase-money debt unpaid, but all of said facts are well known to defendants, and defendant, Obed E. Dickinson, Jr., claims to own said property, and is, and since the institution of this suit has been, occupying and using the same, and is indebted to plaintiffs in the principal, interest, and attorney's fees owing on said notes. Because plaintiffs do not know such facts, they cannot more fully plead the same. The allegations contained in paragraphs 3 and 4 of said amended original petition, in which it is alleged that said land was conveyed to said Obed E. Dickinson, Sr., and that Obed E. Dickinson, Jr., executed said notes, is a mistake, and was so alleged by mistake and inadvertence, and this trial amendment is filed to correct said errors.' And, in connection with said trial amendment, appellees again offered to introduce said evidence, and, upon objection of appellant, the court re-

fused to permit appellees to file said trial amendment, and again excluded said evidence, to which appellees excepted."

There can be no question but that the lien is upon the identical lands in question sought to be foreclosed upon, and all the proper parties are before the court. Hence the court should have permitted the filing of the proposed amended pleadings and heard the proof. This is assuming all the proper parties are before the court.

The alleged variance in the use of "Jr." instead of "Sr.," or vice versa, appearing in either the execution of the notes or deeds ought not to have misled appellant, and might have been disregarded here as of no consequence. Bank v. Stephenson, 82 Tex. 436, 18 S. W. 583.

[6] While it is provided by statute and the rules of the court that the allowance of amendments is within the discretion of the trial court to permit at any time during the progress of the trial, at the same time it requires the court, in the interest of justice, to grant such leave in proper cases, and not to do so, arbitrarily, is error. Railway v. Butler, 34 S. W. 756; Boren v. Billington, 82 Tex. 138, 18 S. W. 101. We therefore think the court here held appellee to too rigid an observance thereof, and hence erred in the refusal to permit the amendment, as well as in entering the judgment against appellant on the ground complained of growing out of that issue.

For the reasons given the court erred in not hearing evidence on appellant's plea as to the alleged breach of the contract, and the plea of failure of consideration upon which appellant sought to set off said notes.

The judgment of the trial court will be reversed, and the cause remanded for a new trial in accordance with the foregoing views.

Reversed and remanded.

---

⬅⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes