**Robert EIKEL, Testamentary Executor of the Succession of John P. Bristow, Deceased, Appellant,**

v.

**BRISTOW CORPORATION et al., Appellees.**

No. 16522.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Oct. 16, 1975.

Eikel & Davey, Robert Eikel, Houston, for appellant.

Kenneth M. Morris, Houston, Vinson, Elkins, Searls, Connally & Smith, Houston, of counsel, for appellees Robert B. Taylor, Allied Industrial Group, Inc., Albert A. Norris and Gray-Norris Co.

Fouts, Moore, Caldwell, Coleman & Royall, Houston, Donald R. Royall, Houston, of counsel, for appellee Harry E. Jacobsen.

Van E. McFarland, Houston, for appellee William G. King.

COLEMAN, Chief Justice.

This is a suit to recover the balance due on certain promissory notes instituted by the Houston National Bank and prosecuted by appellant against Bristow Corporation, the maker of said notes, and certain endorsers and guarantors. At the conclusion of the plaintiff's evidence some of the endorsers and guarantors moved for judgment without having presented their defenses. The court granted said motions and entered judgment on the notes only against the Bristow Corporation. Robert Eikel, the testamentary executor, has appealed.

The Houston National Bank instituted this suit on three promissory notes. The note dated March 15, 1967 in the original principal amount of $78,000.00 was executed by the Bristow Corporation and endorsed by J. P. Bristow. The note dated November 24, 1967 in the original principal sum of $35,000.00 was executed by the Bristow Corporation and endorsed in order by J. P. Bristow, Kenneth L. Burton, Robert B. Taylor, Lindon M. Williams, William G. King and H. E. Jacobsen. The third note was dated February 13, 1967 in the original principal sum of $55,000.00 and was executed by the Bristow Corporation and endorsed in order by Kenneth L. Burton, J. P. Bristow, William G. King, H. E. Jacobsen, R. B. Taylor and Lindon Williams. The bank sued Bristow Corporation, the maker, and also each of the endorsers. In addition the bank sued Paul E. Wolfinger, J. P. Bristow, J. A. Williamson, and Harry E. Jacobsen on a guaranty agreement dated July 2, 1965 by which the parties above named jointly and severally guaranteed the payment to said bank, its successors and assigns, of all loans, discounts, overdrafts or bills of exchange that said bank may or might have made to the Bristow Corporation and of any and all indebtedness, claim or demand, whether past, present or future, that said Bristow Corporation may be due and owing to said bank in any amount not to exceed $100,000.00 plus interest and attorney's fees. The bank also sued Robert B. Taylor, Lindon M. Williams, Kenneth L. Burton, and William G. King on a guaranty agreement in the same terms dated September 18, 1967, limited to an amount not to exceed $140,500.00.

While this action was pending J. P. Bristow died and Robert Eikel qualified as testamentary executor of the succession of J. P. Bristow in the 27th Judicial District Court of Louisiana. Thereafter the executor paid to the Houston National Bank the sum of $25,000.00 and received assignment of the cause of action, the underlying notes and guaranty agreements. In November, 1973 a suggestion of death was filed and thereafter Robert Eikel as executor filed an answer for J. P. Bristow. After the assignment of the cause of action to the executor, the trial court on March 1, 1974, permitted him to be substituted as plaintiff. The executor was permitted to proceed to trial as plaintiff on the pleadings filed by the bank. See *International Shelters, Inc. v. Pinehurst Inv. Corp.*, 474 S.W.2d 497 (Tex. Civ.App.—Corpus Christi, 1971, writ dism'd); *Duncan v. Ponton*, 102 S.W.2d 517 (Tex.Civ.App.—Fort Worth, 1937, no writ hist.); *Dickinson v. Dysart*, 237 S.W. 615 (Tex.Civ.App.—San Antonio 1922, no writ hist.); *Paxton v. First State Bank of Tatum*, 42 S.W.2d 837 (Tex.Civ.App.—Texarkana, 1931, no writ hist.); *Crowe v. Union Auto Ins. Co.*, 79 S.W.2d 168 (Tex.Civ.App. —El Paso, 1935, error dism'd).

■ Despite the fact that the trial court rendered judgment at the conclusion of the plaintiff's evidence, and before the defendants had presented their evidence or had rested, by sustaining the defendants' motion for judgment, he, on request, filed findings of fact and conclusions of law. Findings of fact under such circumstances are inappropriate, since the propriety of the action in sustaining the motion for judgment must be considered under the rules of law authorizing instructed verdicts in jury cases. *Pine v. Gibraltar Savings Association*, 519 S.W.2d 238 (Tex.Civ.App.—Houston [1st], 1975, writ ref'd n. r. e.); *Shirley Nesmith Allen v. Robert E. Nesmith*, 525

S.W.2d 943 (Tex.Civ.App.—Houston [1st], 1975, no writ hist.).

On February 22, 1974, the Houston National Bank assigned to "Robert Eikel, Independent Testamentary Executor of the Succession of John P. Bristow, Deceased," the three promissory notes and the two continuing guaranty agreements dated July 2, 1965 and September 18, 1967, respectively, and "assignor's cause of action in the above described suit entitled *Houston National Bank v. Bristow Corporation et al,* pending on the docket of District Court of Harris County, Texas, 157th Judicial District, under Docket Number 782,032." The assignment was made without recourse or warranties. Each of the three promissory notes was endorsed "Pay to the order of Robert Eikel, Independent Testamentary Executor of the Succession of John P. Bristow, Deceased, without recourse express or implied" and signed "Houston National Bank, Houston, Texas by O. W. Harigel, Senior Vice President. The written assignment agreement recites that it was executed at Houston, Texas. The evidence reflects that Robert Eikel paid to the bank the sum of $25,000.00 by check drawn on Robert Eikel, Trustee Account. The judgment entered by the district court contains this recital:

"BE IT REMEMBERED that the above entitled and numbered cause came on for trial on the 10th day of December, 1974, at a regular setting thereof, and came the plaintiff Robert Eikel, Testamentary Executor of the Succession of John P. Bristow, Deceased, substituted as plaintiff for the Houston National Bank of Houston, Texas, by virtue of assignment of the said bank's causes of action herein under order of this Court dated March 1, 1974, . . . ."

The trial court entered a judgment sustaining a motion for nonsuit as to the claim against J. A. Williamson and rendering judgment on the notes against Bristow Corporation. It granted the motion that plaintiff take nothing as to J. P. Bristow, Kenneth L. Burton, William G. King, Harry E. Jacobsen, Robert B. Taylor, and Lindon M. Williams. The cross-actions and third party actions of J. P. Bristow, Harry E. Jacobsen, and Robert B. Taylor were denied.

■ The appellant Robert Eikel presents by his point of error number one the proposition that the trial court erred in its conclusion of law:

"The reacquisition of a promissory note by a prior endorser or co-obligor discharges liability on the note itself."

The trial court erred in holding that the notes in question were discharged by their acquisition by Mr. Eikel. The extent of the discharge of any party from liability on an instrument is governed by Section 3.601 of the Uniform Commercial Code. Under this section the liability of all parties is discharged when any party who has himself no right of action or recourse on the instrument reacquires the instrument in his own right. Here Mr. Eikel has a cause of action against the corporate maker of the three notes and against Mr. Burton on one of the notes. Section 3.603, Uniform Commercial Code, provides in Section (b):

"Payment or satisfaction may be made with the consent of the holder by any person including a stranger to the instrument. Surrender of the instrument to such a person gives him the rights of a transferee (Section 3.201)."

Appellees principally rely upon the provisions of Section 3.208 of the Uniform Commercial Code to sustain the judgment of the trial court. This section provides:

"Where an instrument is returned to or reacquired by a prior party he may cancel any indorsement which is not necessary to his title and reissue or further negotiate the instrument, but any intervening party is discharged as against the reacquiring party and subsequent holders not in due course and if his indorsement has been cancelled is discharged as against subsequent holders in due course as well."

A comment under this section of the Uniform Commercial Code provides:

"The reacquirer may keep the instrument himself or he may further negotiate it. On further negotiation he may or may not cancel intervening indorsements. In any case intervening indorsers are discharged as to the reacquirer, since if he attempted to enforce it against them they would have an action back against him. . . . "

Section 3.118(5), Uniform Commercial Code, provides:

"Unless the instrument otherwise specifies two or more persons who sign as maker, acceptor or drawer or indorser and as a part of the same transaction are jointly and severally liable even though the instrument contains such words as 'I promise to pay'."

The Uniform Commercial Code comment found under this section states that it applies only where such parties sign as a part of the same transaction; successive endorsers are, of course, liable severally but not jointly."

Section 3.414 of the Uniform Commercial Code in paragraph (b) thereof provides:

"Unless they otherwise agree indorsers are liable to one another in the order in which they indorse, which is presumed to be the order in which their signatures appear on the instrument."

■ The liability of the endorsers, as contrasted to the guarantors, is dependent, therefore, on whether or not there has been a reacquisition of the instrument by a previous endorser. There is some evidence that all the endorsers signed as a part of the same transaction. Prior to the time the note was transferred to Mr. Eikel, it was held by the original payee. It is apparent from the face of the instrument that the endorsers were neither holders nor transferors. There is testimony that the payee bank required all stockholders of closely held corporations to which it made loans to endorse or otherwise guarantee the notes representing such loans. When Mr. J. P. Bristow disposed of his majority stock ownership in the corporation, the parties purchasing such stock immediately signed an agreement with the bank by which they guaranteed all indebtedness of the corporation.

It must be noted that this action is being prosecuted by Mr. Robert Eikel by virtue of an assignment of the notes to him by the payee bank. The evidence shows that Mr. Eikel was appointed testamentary executor of the succession of John P. Bristow and duly qualified as such executor in the State of Louisiana. There is no evidence that an ancillary administration has been obtained in the State of Texas. Section 3.401 of the Uniform Commercial Code provides that no person is liable on an instrument unless his signature appears thereon. John P. Bristow never reacquired the notes on which this suit was brought. They were purchased by Mr. Eikel, and assigned to him, presumably in his representative capacity as executor of the Bristow estate. The instruments were acquired by the executor, not by Mr. Bristow, and the executor was not a prior party. The right of action upon the notes here involved did not pass to his estate from Mr. Bristow.

■ The endorsers were accommodation parties and stood in the relation of surety to the maker. Section 3.415(a) provides that an accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it. By this language the requirement found in Section 29 of the Uniform Negotiable Instruments law that an accommodation party signed the instrument without receiving value therefor is eliminated. As stated in a comment to the Uniform Commercial Code under this section, the essential characteristic is that the accommodation party is a surety, and not that he signed gratuitously. Since the endorsers are parties to the instrument their liability is that provided by the Uniform Commercial Code.

■ The guaranty agreements which are involved in this suit are not governed by

the provisions of the Uniform Commercial Code. Section 3.416 deals with guaranty agreements which are added to a signature on the instrument. The cause of action is against the signers of the written guaranty agreements and suit will not lie against them on the notes. The signers of the guaranty instruments had guaranteed the payment to the bank, its successors and assigns, "any and all loans, discounts, overdrafts or bills of exchange that the bank may or might have made to the said debtor." The guarantee is a limited one, the limit being specified in each agreement. Each instrument provides that it is a continuing guaranty to the extent of the sum above mentioned which will remain in full force and effect until revoked by notice in writing to the bank and that it extends to and covers any and all loans at any time made and any and all indebtedness at any time owing to the bank and any and all renewals or extensions of such indebtedness. Each agreement also contains a provision that the liability of the guarantor shall be primary and that it shall not be necessary in order to enforce payment of any monies to become due thereunder to first institute suit or exhaust any remedies against the debtor before requiring guarantors to pay the same. The trial court erred in rendering judgment absolving the signers of these guaranty agreements from liability on the indebtedness represented by the notes, which indebtedness had been assigned to Mr. Eikel.

A problem arises as to the disposition to be made of this case by reason of the fact that the record affirmatively reflects that Mr. Eikel purports to act in this case as an executor deriving his power and authority from the 27th District Court of the Parish of St. Landry in the State of Louisiana. It is well settled that a foreign administrator or executor, as such, cannot sue or be sued in the courts of this state, or act as legal representative of a foreign estate in this state. *Thacker v. Lindahl*, 48 S.W.2d 588 (Tex.Com.App.1932); *Faulkner v. Reed*, 241 S.W. 1002 (Tex.Com.App.1922).

■ In *Terrell v. Crane*, 55 Tex. 81 (1881), a suit was brought by Newton Crane, a resident of St. Louis, Missouri, who sued in a representative capacity, describing himself as the administrator of John H. Dowell, deceased, appointed as such by order of the probate court of the City of St. Louis, against S. L. Terrell et al. upon a promissory note alleged to have been executed by them and payable to the order of John H. Dowell. A writ of error was prosecuted from a judgment by default rendered in favor of the plaintiff Crane as such administrator. The court stated:

"That such suit cannot be maintained in the courts of this state, by virtue of letters of administration issued from the Probate Court of a sister state, upon a debt belonging to the estate of decedent, where title thereto has not been directly vested into the administrator, as when made payable to him, or when judgment had been previously recovered in his name, is the established doctrine of this court. . . .

"This is based upon the principle that one state should not have extraterritorial jurisdiction over assets of a deceased person; otherwise these assets might be exhausted or withdrawn to the detriment of domestic creditors, who have the right to have them administered under the laws of their own state, and to whose jurisdiction they are naturally subjected . . ."

In *Robinson v. City National Bank*, 56 F.2d 225 (N.Dist.Tex.1931), it was stated that where assets belonging to an estate were taken into possession within the state by foreign executors and converted into cash and the cash then deposited in a Texas bank, the transaction between the executors and the bank was a personal transaction and formed a contract between the executors and the bank, and that the executors in such a case could maintain a personal action in any Texas court of competent jurisdiction or in the federal court for the purpose of enforcing the collection of the

money deposited by them with the defendant. The court cited *Moore v. Petty* (C.C. A.), 135 F. 668, and quoted from the opinion as follows:

"The general rule undoubtedly is that an executor or administrator in his representative capacity cannot maintain an action in the courts of any sovereignty other than that under whose laws he was appointed and qualified, without obtaining an ancillary grant of letters in the state where the action is brought, unless the right to do so is conferred upon him by the law of the forum. . . . But whenever the cause of action declared upon by the foreign executor or administrator is one which involves an assertion of his own right, rather than one of the deceased, or which has accrued directly to him through his contract or transaction, and was not originally an asset of the estate in his charge, he may maintain an action in another state for the enforcement thereof, although express authority so to do may not be found in a statute of the forum. The principle underlying this modification of the general rule is that, when the cause of action accrued directly to the executor or administrator, it is assets in his hands for which he may sue in his personal capacity, and, if he sues as executor or administrator, the words so describing him will be regarded as merely descriptive and be rejected as surplusage."

The exception to the general rule referred to in the cases seems to be the same exception to which the Supreme Court of Texas referred in *Terrell v. Crane,* supra, by saying:

"where the title thereto has not been directly vested into the administrator, and when made payable to him, or when judgment has been previously recovered in his name."

■ We conclude therefore, as a matter of law, that in prosecuting this suit Robert Eikel was asserting his own right rather than one of the deceased and the notes in question were assets in his hands for which he was entitled to sue in his personal capacity.

Rule 155, Texas Rules of Civil Procedure, provides:

"Where there are two or more plaintiffs or defendants, and one or more of them die, upon suggestion of such death being entered upon the record, the suit shall at the instance of either party proceed in the name of the surviving plaintiffs or against the surviving defendants, as the case may be."

■ J. P. Bristow was a named defendant in the case. On suggestion of death being filed Robert Eikel voluntarily answered as executor of his estate. The death of J. P. Bristow pending suit removed him as a party. As a foreign executor Eikel had no standing to defend the suit and his voluntary action did not operate to continue the suit as to J. P. Bristow. See *First National Bank in Dallas v. Hawn,* 392 S.W.2d 377 (Tex.Civ.App.—Dallas, 1965, writ ref'd n. r. e.).

In considering the judgment to be entered in this cause on reversal, Section 324 of the Probate Code came to the attention of the court. This section provides generally that it shall be unlawful for an executor to purchase for his own use "or for any purposes whatsoever" any claim against the estate he represents. Since this section of the Probate Code was not raised in the trial court nor in the briefs on appeal, we express no opinion as to its applicability to the fact situation before us and will remand the case as hereinafter ordered.

The judgment of the trial court is affirmed insofar as it relates to Albert A. Norris, the Bristow Corporation, the Gray Norris Company, the Allied Industrial Group, Inc., and J. A. Williamson. In all other respects and as to all other parties the judgment of the trial court is reversed and the cause is remanded.